Mary Berner, Appellee, v. Prairie State Bank, Appellant.

Gen. No. 37,683.

Wilson, J., dissenting.

Opinion filed June 26, 1935. Rehearing denied July 10, 1935.

Campbell, Clithero & Fischer, of Chicago, for appellant.

Downes, Downes & Downes and Joseph W. Cox, all of Chicago, for appellee.

Mr. Presiding Justice Hebel delivered the opinion of the court.

This is an appeal by the defendant from a judgment in favor of the plaintiff for $12,500, entered upon the verdict of the jury in a suit for malicious prosecution. The four counts of the declaration upon which the verdict was based are substantially as follows:

In the first count it is alleged that the defendant maliciously and for want of probable cause procured the plaintiff's arrest, detention, indictment and imprisonment on a charge of having forged a bank check with intent to cheat and defraud the defendant; that thereafter, when the case came up for a hearing, the trial

court, over her protests, entered an order pleading her guilty, and admitting her to probation, from which she was discharged a year later. Some months after her discharge from probation, another judge presiding in the criminal court of Cook county vacated the judgment, granted a new trial, and the indictment was then *nolle prossed* and the plaintiff adjudged not guilty.

The other three counts in the declaration charged, in more general terms, the preferring of charges in the municipal court, a holdover of the plaintiff to the grand jury on false testimony, arrest and confinement in custody on a charge of forgery from October 22, 1929, to January 13, 1930, all without reasonable or probable cause, and by adjudication entered on September 4, 1931, the plaintiff was found not guilty.

The defendant filed pleas of not guilty and the plea that the suit was barred by the two-year statute of limitations.

From the evidence offered upon the trial of the cause, it appears that from September 1928 to October 1929, 50 or 60 bogus checks were reported to the Illinois Bankers Association. Among that number was included a check of the Prairie State Bank that was cashed by the Continental Illinois Bank. A number of blank checks had been stolen from the office of a former employer of the plaintiff, and after the bogus checks were issued, investigators for the Cicero State Bank, which had cashed bogus checks, in locating the place of employment of the plaintiff, traced her to Butler Bros., and she was arrested there on October 17, 1929. After she had been arrested, she was taken to the offices of the Bankers Association, where a number of persons identified her as the woman who presented and passed bogus checks. Plaintiff was taken from the Bankers Association to the police station, where informations were filed and she was turned over to the police.

On the following day, Walter A. Volkman, who at the time was employed by the defendant as a teller, was called to the police station by telephone. At the time, neither the president nor the cashier was at the bank, but a Mr. Wegner, an assistant cashier, accompanied Volkman to the police station. At the station they met and talked with a police officer, and Volkman was again asked as to whether the plaintiff was the woman who cashed a check at the bank, to which he replied that in his opinion she was. He was asked at the police station to sign a complaint. Volkman then turned to Wegner and asked whether he should sign the paper, and he was advised to sign it. This document, which was an information, appears to have been an unverified complaint, dated October 19, 1929, charging the plaintiff with having passed a forged check drawn on the Prairie State Bank. Thereafter, on October 21, 1929, a preliminary hearing was had before one of the judges of the municipal court of Chicago. Plaintiff was taken to the county jail and a *capias* was issued and served on October 22, 1929.

Subsequently, indictments were returned against the plaintiff in the Cicero State Bank case and on five other charges, including the case based on the check cashed by the Prairie State Bank. Plaintiff was incarcerated and remained in jail until January 10, 1930, when she was tried before Judge Gemmill in the Cicero State Bank case, and the jury, upon a hearing, returned a verdict of guilty.

From the evidence it appears that the following orders were entered in the indictment proceeding then pending in the criminal court of Cook county against Mary Berner, charged with passing a forged check drawn on the Prairie State Bank, namely:

On January 13, 1930:

''Plea of not guilty withdrawn. Plea of guilty received. Defendant warned. Plea of guilty received

and entered of record. Testimony heard. Finding guilty to the indictment. Application for probation entered. Probation allowed for one year. Defendant released on probation $500 own recognizance bond. Permission given to leave state with father.''

On January 16, 1931, defendant discharged from further supervision.

From an order dated September 4, 1931; the following appears:

"This day come the said People by John A. Swanson, State's Attorney and the said defendant as well in her own proper person as by her Counsel also comes.

"And the Court hearing Counsel in support of the motion for a new trial in this cause heretofore entered herein as well as in opposition thereto, and being fully advised in the premises doth sustain said motion and orders that the said defendant do have a New Trial in this cause.

"It is further ordered by the Court that the Judgment and sentence in this cause heretofore entered herein be and the same are hereby vacated and the said defendant granted a New Trial in this cause.

"And the State's Attorney now says that he will not further prosecute this indictment against the said Defendant, Mary Berner. Thereupon it is ordered by the Court that the indictment in this cause be and the same is hereby dismissed out of this Court as to the said Defendant, Mary Berner, and the said Defendant, Mary Berner, go hereof without day.''

The records also show that on the same date the following order was entered in the six cases against Mary Berner, the plaintiff, which included the indictment in the Prairie State Bank case, as follows:

"On motion of Mary Berner to vacate the judgments hereunder, and by virtue of Section 89 of Chapter 110 of Cahill's Illinois Revised Statutes, 1929, the court having heard evidence in support of the petition and

the State's Attorney of Cook County consenting thereto, and it appearing to the Court that the allegations of said petition have been proved, that the conviction in these cases occurred through an excusable mistake of fact as to the identity of the defendant Mary Berner, and through an excusable mistake of fact as to the defendant at the time of trial, in her not being informed as to the existence of legal defenses to the charges herein, It is Therefore Ordered that the judgment and sentences heretofore entered in the above entitled cause be and the same are hereby vacated and the defendant granted new trials, and all of said causes, on motions of the State's Attorney be *nolle prossed.*"

It appears from the record that the plaintiff testified that on January 13 (after her conviction by a jury) she was again brought before Judge Gemmill on the five other cases pending against her. In chambers, the judge told her that if she would plead guilty he would grant her probation. She replied that she would rot in jail first. Afterwards there was a hearing in open court in which the judge entered a plea of guilty, the defendant and her attorney standing mute, and she was granted probation to her father, who took her to her home in Iowa. There is a conflict in the evidence as to whether or not the plaintiff at that time made a statement to the court that she was not guilty.

Plaintiff testified that she knew she could not get probation without a plea of guilty; that she understood a plea of guilty was entered and that was why she received probation.

Volkman, the teller who signed the complaint, was subpoenaed as a witness and appeared at the hearings before Judge Borrelli, the grand jury, and Judge Gemmill. He talked to one of the officers of the bank before going to court. They told him he was under subpoena and had to go, and when he returned he reported to one of the officers what had occurred in the court room.

Volkman testified that in his opinion the plaintiff was the woman who cashed the check; that he believed it at the time he signed the complaint, and still believed it and when he testified in the criminal court; that in the year 1933, he first heard she was not the woman.

A. P. Sherwood, an investigator who had charge of the Mary Berner investigation for the Illinois Bankers Association, testified that about December 14, 1929, he first saw three other checks in the same handwriting as those under which plaintiff was indicted. He showed them to the representatives of the Cicero Bank. He attended plaintiff's trial, and before the trial, talked to the Assistant State's Attorney, showed him the other checks and told him that a mistake was being made in the prosecution of Mary Berner. Sherwood also testified that he showed these checks to all the witnesses, including Volkman, and told them it could not have been Mary Berner who had been passing the checks because she was in jail at the time when the last three checks were passed. He also talked with the then president of the Prairie State Bank and told him that in regard to these three checks a mistake had been made in the prosecution of Mary Berner.

Sherwood also testified that when in the judge's chambers he attempted to tell Judge Gemmill his story, but the judge would not listen to him.

On the question of damages sustained by the plaintiff, she testified that she was subjected to the usual prison routine and compelled to undergo examinations, measurements, etc., when arrested and during her stay in the county jail. She said that she got up out of a sick bed for her trial in the Cicero State Bank case on January 10, 1930, and was sick in bed with pleurisy until Easter Sunday; that it was about three months before she was entirely well. After her release from the jail she was unable to get employment until September 4, 1931; that she expended in the defense of the criminal cases between $700 and $800. At the time she

was arrested she was earning $130 a month. After September 4, 1931, she received $65 a month for temporary employment.

Upon the evidence, the jury found the defendant guilty and in answer to special interrogatories submitted by the court of its own motion, the jury found that Volkman had acted as agent for the defendant and acted wilfully and maliciously in testifying against the plaintiff.

A party instituting a criminal prosecution for a criminal offense assumes a certain legal responsibility to the party so prosecuted. In making a charge, the person so charging must have probable cause against the party charged with violation of the law. Probable cause is a belief held in good faith by the prosecutor in the guilt of the person charged with the offense, based upon circumstances sufficiently strong to induce a belief in the mind of a reasonably cautious person that the person prosecuted is guilty of the particular offense charged. Such is the rule in the case of *Glenn v. Lawrence,* 280 Ill. 581.

This rule is qualified to the extent that if the person charged is found not guilty when put upon trial, such fact does not indicate want of probable cause, for the reason that the person making the charge is not bound to prove the guilt of the defendant at the peril of being personally liable in an action for damages, provided the prosecutor acts upon probable cause, and he is then excused whatever the result of the prosecution may be. *Calef v. Thomas,* 81 Ill. 478.

A mistake or error not amounting to gross negligence will not affect the question of probable cause, when there is an honest belief on the part of the party swearing out a warrant for the arrest of another that such person is probably guilty. *McGuire v. Goodman,* 31 Ill. App. 420.

It has also been held that the fact that the party started the criminal proceedings, and in doing so acted

maliciously, does not tend to prove, nor raise an inference of, want of probable cause. It has been held in this State that where a judgment of conviction by a competent tribunal has been reversed because of a mistaken view of the law by the trial court this does not of itself establish that there was no probable cause for the prosecution. *McElroy v. Catholic Press Co.,* 254 Ill. 290; *Frankfurter v. Bryan,* 12 Ill. App. 549. Even though probable cause for the prosecution may be present, it is immaterial that the accused was found not guilty, but was actually innocent. *Tumalty v. Parker,* 100 Ill. App. 382; *Anderson v. Friend,* 85 Ill. 135.

It has also been held by the Supreme Court of Rhode Island, 25 R. I. 255, in *Fox v. Smith,* that knowledge acquired after the institution of the criminal proceeding tending to show the innocence of the accused is irrelevant, as probable cause depends not upon the guilt or innocence of the accused, but upon the prosecutor's belief in his guilt, upon reasonable grounds, at the time of the prosecution. Such being the law controlling in an action of malicious prosecution, it of necessity applies in the instant case.

In analyzing plaintiff's action, it is clear that it was based upon the theory that there was want of probable cause in the prosecution of the plaintiff for the offense charged, and in order to establish want of probable cause for prosecution there was introduced in evidence, over the objection of the defendant, certain court orders, not alone for the purpose of showing the disposition of the charges, which of course was proper if limited for that purpose, but also for the purpose of showing certain proceedings heard before Judge Gemmill, in which the court erred in the entry of certain of the orders. This of itself could not be properly charged against the defendant in the instant case.

The same rule would apply to the order entered by Judge McGoorty in the criminal court. The effect of this order would be to influence the jurors in believing

that there was a disposition of certain indictments, wherein the plaintiff in this case was the defendant and in which the defendant in the instant case was not interested. The court's order was clearly prejudicial, when it appears from the order entered on plaintiff's motion of September 4, 1931, ''that the conviction of these cases occurred through an excusable mistake of fact as to identity,'' and that through an excusable mistake of fact she was not informed as to the existence of her legal defenses. The finding by the court would indicate to the jury not only that the court adjudicated that the plaintiff was not properly advised as to her legal rights, but also that she was not properly identified in the prosecution of those cases. There could be no course for the jury but to follow what was found by the court in those orders, and no doubt they believed that the defendant in the instant case did not act with probable cause in the prosecution of this plaintiff.

The law is well settled that error of the trial court does not go to the question of probable cause, nor is the finding of not guilty of plaintiff as defendant in a criminal proceeding material upon the question: Did the defendant as complainant in a criminal prosecution act in good faith in the prosecution of the charge? Otherwise, it would be possible, if acting in good faith, for the prosecutor to be held liable for the error of the trial court, and in addition he would be compelled to establish the guilt of the person charged with crime. Such is not the law, as indicated by the established rules of courts of appeal referred to in this opinion.

For the reasons stated, and without further comment on the evidence, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

HALL, J., concurs.
WILSON, J., dissents,