CLAUDELL TURNER, Plaintiff-Appellant, *v.* THE CITY OF CHICAGO *et al.*,
Defendants.—(R. R. DONNELLEY & SONS CO., Defendant-Appellee.)

First District (2nd Division)    No. 79-1794

Opinion filed December 16, 1980.

Judith A. Halprin, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Thomas M. Crisham, and Kevin R. Sido, of counsel), for appellee.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

Plaintiff, Claudell Turner, appeals from a summary judgment entered by the circuit court of Cook County in favor of defendant, R. R. Donnelley & Sons Co. (hereinafter referred to as Donnelley), in an action for malicious prosecution. We consider whether the trial court erred in granting Donnelley's motion for summary judgment.

For reasons hereinafter set forth, we affirm.

Except where noted, the following factual allegations emerge from the pleadings and discovery depositions.

On the afternoon of December 24, 1972, Arnold Van Bergen, manager of Donnelley's plant security department, was informed that an employee had observed copper ingots being thrown from a window of one of Donnelley's buildings to the ground. After instructing the plant security officers "to keep out of sight and watch the pile of copper ingots," Van Bergen called the Chicago Police Department, and two police officers were dispatched to Donnelley's plant.

The police officers, the plant security officers and Van Bergen positioned themselves at different sites in the vicinity of the pile of copper ingots. Shortly before 6 p.m., Van Bergen saw an automobile approach and an individual exit therefrom. Van Bergen's vision of the individual as he walked away from the automobile was obstructed by the plant building. Subsequently the headlights of the police car were turned on and Van Bergen "saw the individual stop and just stand." Van Bergen, the plant security officers and the police officers ran toward the individual. Donnelley's security officers informed Van Bergen that when the headlights were turned on, the individual dropped two copper ingots.[1] Van Bergen further testified that he had observed two copper ingots approximately 15 to 20 feet away from where the individual was standing while he was questioned by Chicago police officers. Donnelley's security officers informed Van Bergen that the individual had moved away from the two ingots as the Chicago police officers approached him. The two copper ingots were situated approximately 80 to 100 feet away from the pile of ingots. In the presence of Van Bergen the police officers ques-

---

[1] Officer Baker testified at his discovery deposition that he had observed a man pick up the copper ingots and place them in the trunk of the automobile. It does not appear from the record that Officer Baker's observations were conveyed to Van Bergen.

tioned the individual and ascertained that he was Claudell Turner, the plaintiff herein.[2]

Turner testified at his discovery deposition that while en route from a friend's house to a tavern he had stopped at Donnelley's plant to urinate and to see a co-employee. It was while he was urinating that the headlights of the police car were turned on. Turner further testified at his discovery deposition that at no time during his arrest or immediately thereafter did he make any statement to the Chicago police, to Donnelley security officers or to Van Bergen concerning the incident.

Turner was then arrested and taken to the police station. At the request of police, Van Bergen executed a sworn complaint whereby Turner was charged with the felony theft of Donnelley's property. On March 21, 1973, a preliminary hearing was conducted and at the conclusion thereof the trial court entered a finding of probable cause. On April 24, 1973, the trial court entered an order holding Turner over pending action by the grand jury. In October 1973 the grand jury returned a "no true bill."

During the pendency of the grand jury proceedings, Officer Baker executed a complaint, based upon the same circumstances as the complaint executed by Van Bergen, charging Turner with misdemeanor theft,[3] and an arrest warrant was issued thereupon. Officer Baker testified at his discovery deposition that he had no recollection of the circumstances surrounding his execution of the complaint on May 8, 1973. Van Bergen testified at his discovery deposition that he was unaware that a second complaint charging Turner with theft had been executed. He had no recollection of any conversation with Officer Baker occurring after December 24, 1972.

On February 16, 1975, Turner, while operating his automobile, was stopped by police for a traffic violation. When the officer "ran" the customary criminal history "check" he discovered that there was an outstanding warrant for Turner's arrest. Turner was arrested and taken to the police station. While at the station Turner did not see any Donnelley employees or agents. At Turner's court appearance following this arrest, although both the police and the court attempted to secure the presence of an agent of Donnelley, no such agent was present. On March 13, 1975, the case was "stricken from the docket with leave to reinstate."

---

[2] Although Van Bergen testified at his discovery deposition that he had not known Turner or Turner's name prior to this time, Turner, however, testified at his discovery deposition that he knew Van Bergen prior to December 24, 1972, from having seen Van Bergen in the plant and having said "hello" to him on several occasions.

[3] The only difference between the two complaints is that the complaint charging Turner with felony theft alleged the value of the subject property to be more than $150, whereas the complaint charging Turner with misdemeanor theft alleged the value of the subject property to be less than $150.

The summary judgment for Donnelley entered by the trial court is a salutary means of disposing of litigation in which there is no genuine factual dispute. (*Joiner v. Benton Community Bank* (1980), 82 Ill. 2d 40, 44, 411 N.E.2d 229.) Section 57 of our Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57(3)) authorizes summary judgment where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Our inquiry focuses, then, upon whether the pleadings in this case, together with the depositions, pose a genuine issue of material fact for, if they do, the trial court erred in its summary disposition. We believe, however, that they do not pose a genuine issue of material fact, and that the summary judgment entered by the trial court was proper.

Our supreme court has indicated that suits for malicious prosecution are not favored in the law. (*Joiner v. Benton Community Bank*, at 44-45.)

"Public policy favors the exposure of crime, and the cooperation of citizens possessing knowledge thereof is essential to effective implementation of that policy. Persons acting in good faith who have probable cause to believe crimes have been committed should not be deterred from reporting them by the fear of unfounded suits by those accused. It was for the purpose of encouraging and protecting those who exercise their constitutional right to appeal to our courts for redress of private or public grievances that the circumstances in which malicious prosecution actions may be brought have been rather narrowly circumscribed."

The essential elements of the action of malicious prosecution are (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice on the part of defendant; and (5) damages resulting to the plaintiff. (*Joiner v. Benton Community Bank*, at 45; *Ritchey v. Maksin* (1978), 71 Ill. 2d 470, 475, 376 N.E.2d 991.) "If the absence of one or more of these essential elements has been established to the point that it may fairly be said that no genuine issue of fact as to its absence exists, summary judgment was appropriate." *Joiner v. Benton Community Bank*, at 45.

The want of probable cause for instituting proceedings is the basis for a malicious prosecution action (*Israel v. Brooks* (1860), 23 Ill. 526; *Mangus v. Cock Robin Ice Cream Co.* (1977), 52 Ill. App. 3d 110, 116, 367 N.E.2d 203), and it has been held an indispensable element of the cause of action (*Freides v. Sani-Mode Manufacturing Co.* (1965), 33 Ill. 2d 291, 295, 211 N.E.2d 286; *Mangus v. Cock Robin Ice Cream Co.*, at 116.) If it appears that there was probable cause to institute the proceedings, such

fact alone constitutes an absolute bar to an action for malicious prosecution. *Mangus v. Cock Robin Ice Cream Co.*, at 116; *Brown v. Tucker* (1918), 214 Ill. App. 162.

■■ A person should not be held liable for malicious prosecution upon a failure to convict the person accused. It is sufficient if there is probable cause, whether the accused is in fact guilty or not. (*Robinson v. Econ-O-Corporation* (1978), 62 Ill. App. 3d 958, 960, 379 N.E.2d 923; *Mangus v. Cock Robin Ice Cream Co.*, at 116.) Probable cause in this sense means such a state of facts, in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or to entertain an honest and strong suspicion that the person arrested is guilty. (*Glenn v. Lawrence* (1917), 280 Ill. 581, 587, 117 N.E. 757; *Mangus v. Cock Robin Ice Cream Co.*, at 116.) A mistake or error not amounting to gross negligence will not affect the question of probable cause in an action for malicious prosecution when there is the honest belief by the complainant at the time of subscribing a criminal complaint that the accused is probably guilty of the offense. (*Mangus v. Cock Robin Ice Cream Co.*, at 116; *Berner v. Prairie State Bank* (1935), 281 Ill. App. 31, 38.) A reasonable ground for belief of the guilt of an accused may be on information from other persons as well as on personal knowledge. (*Harpham v. Whitney* (1875), 77 Ill. 32, 40; *Mangus v. Cock Robin Ice Cream Co.*, at 117.) It is not necessary to verify the correctness of each item of information so obtained; it is sufficient to act with reasonable prudence and caution in so proceeding. *Mangus v. Cock Robin Ice Cream Co.*, at 117; *Gardiner v. Mays* (1887), 24 Ill. App. 286, 289.

It is our opinion that the record in the case at bar discloses a failure on the part of Turner to present some factual basis that would arguably establish lack of probable cause on Donnelley's part in instituting the felony theft proceedings on December 24, 1972. Rather, the pleadings and depositions clearly show, without any genuine dispute, that on December 24, 1972, when Van Bergen executed the felony complaint on behalf of Donnelley, he had an honest belief that Turner was probably guilty of felony theft.

Van Bergen's testimony at his discovery deposition reveals that he was told by Donnelley security officers that Turner had dropped two ingots when the automobile headlights were turned on, and that Turner had moved away from the spot where he had dropped the ingots as he was approached by the Chicago police officers.[4] Van Bergen observed the two ingots on the ground approximately 15 to 20 feet away from where Turner had been apprehended and detained for questioning by Chicago police officers. Van Bergen also observed that the two ingots lay

---

[4] We again note that Officer Baker's reported observations differed substantially from those of the Donnelley security officers. However, we again note that there is no indication in the record that Officer Baker's reported observations were conveyed to Van Bergen.

approximately 80 to 100 feet away from the pile of ingots. Turner's own discovery deposition reveals that at no time during his arrest or immediately thereafter did he make any statement to Chicago police officers, Van Bergen or Donnelley security officers concerning the incident. Nor did Turner dispute the presence and location of the copper ingots. Thus, we conclude that at the time Van Bergen, on behalf of Donnelley, executed the felony complaint on December 24, 1972, Donnelley had probable cause to proceed against Turner based upon Van Bergen's own observations and information conveyed to Van Bergen by Donnelley security officers. We do not agree with Turner that the depositions raise inferences concerning the absence of probable cause upon which fair and reasonable-minded persons might differ.

■■ It appears to be urged by Turner that the grand jury's return of a "no true bill" constitutes proof of want of probable cause. However, the return of a "no true bill" by the grand jury does not raise an inference that Van Bergen did not honestly believe that the actions by Turner constituted felony theft. *Glenn v. Lawrence*, at 587-88.

■■ Turner also alleges in his complaint that his arrest on February 16, 1975, was a result of the "felony complaint" executed by Van Bergen on December 24, 1972. However, the record discloses that Turner's arrest on February 16, 1975, was the result of an outstanding arrest warrant issued on May 8, 1973, upon the misdemeanor complaint executed by Officer Baker on May 8, 1973. Officer Baker testified at his discovery deposition that he could not recall the circumstances surrounding his execution on May 8, 1973, of the misdemeanor complaint. Van Bergen testified that he had no recollection of any conversation with Officer Baker either between December 24, 1972, and May 8, 1973, or at any time thereafter. Nor did Van Bergen's records reflect any such conversation. Furthermore, Van Bergen testified that he was unaware that a second complaint had been filed. Turner testified at his discovery deposition that after his arrest on February 16, 1975, he did not see any representative of Donnelley at the police station. Turner further testified that at two court appearances subsequent to his arrest on February 16, 1975, no representatives of Donnelley were present even though the court and police had "tried to get them to come down."

Turner states in his appellant's brief, however, that:

> "* * * Van Bergen doesn't know if he or anyone else, acting on behalf of [Donnelley], requested the issuance of the second complaint causing the second arrest and prosecution of Appellant. Officer Baker doesn't know if [Donnelley] requested it either. Their mutual lack of knowledge and recall does not defeat [Turner's] claim and does not result in a complete absence of any issue of material fact upon which the trial court could appropriately grant summary judgment."

Instead of setting out facts which would bear upon whether Donnelley did initiate the May 8, 1973, complaint, Turner merely alleges that there is not "a complete absence of any issue of material fact upon which the trial court could appropriately grant summary judgment." Merely alleging that there exists a genuine issue of material fact does not create such an issue. (*Giampa v. Sunbeam Corp.* (1966), 68 Ill. App. 2d 425, 216 N.E.2d 233.) Turner points to no fact which in any way tends to support his apparent allegation that defendant initiated the prosecution stemming from the May 8, 1973, misdemeanor complaint executed by Officer Baker and the February 16, 1975, arrest. While Turner intimates that he may be able to prove at trial that Donnelley did initiate the prosecution stemming from the May 8, 1973, complaint and the February 16, 1975, arrest, no such "evidence" is set out by way of affidavit, nor was it alleged who would testify to such facts at trial. On the contrary, it clearly appears that the only action taken by any of Donnelley's representatives concerned the felony complaint executed on December 24, 1972, and prosecution stemming therefrom.

■■■ Malice is also an essential element of malicious prosecution. Malice, as an element of malicious prosecution, does not necessarily mean personal ill-will, spite or hatred toward the person prosecuted, but is proved by showing that the prosecutor was actuated by improper motives. (*Glenn v. Lawrence*, at 586.) In order to support an action for malicious prosecution there must be both malice and want of probable cause, and they must concur. (*Mangus v. Cock Robin Ice Cream Co.*, at 117; *Keller v. Continental Distributing Co.* (1969), 105 Ill. App. 2d 327, 245 N.E.2d 513.) Malice may be inferred from want of probable cause when the circumstances are inconsistent with good faith by the prosecutor and where the want of probable cause has been clearly proved. (*Mangus v. Cock Robin Ice Cream Co.*, at 117; *Hughes v. New York Central System* (1959), 20 Ill. App. 2d 224, 230, 155 N.E.2d 809.) However, malice may not be inferred where probable cause exists. (*Mangus v. Cock Robin Ice Cream Co.*, at 117; see *Vasquez v. Jacobs* (1960), 23 Ill. App. 2d 457, 163 N.E.2d 230.) We have concluded that Donnelley proceeded against Turner with probable cause, and therefore malice cannot be inferred. Moreover, a review of the pleadings and depositions fails to disclose even a scintilla of evidence that Donnelley, through its employees, was actuated by improper motives.

Consistent with the foregoing we affirm the judgment of the circuit court of Cook County.

Affirmed.

STAMOS and HARTMAN, JJ., concur.