MARY ELY, Plaintiff-Appellee, v. NATIONAL SUPER MARKETS, INC., *et al.*, Defendants-Appellants.

Fourth District   No. 4—86—0094

Opinion filed November 5, 1986.—Rehearing denied December 4, 1986.

Ann E. Hamilton, of St. Louis, Missouri, for appellants.

James M. Drake and James C. Craven, both of Springfield, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

Plaintiff filed suit for slander and malicious prosecution. The jury awarded plaintiff $20,000 on the slander claim, $150,000 on the malicious-prosecution claim, and punitive damages of $80,000 for malicious prosecution. Defendants appeal.

On December 29, 1982, plaintiff was detained for shoplifting a $3.79 bottle of Dexatrim diet pills at the National Super Market at 709 West Jefferson, Springfield. She was a cashier employed by defendant National Super Markets, Inc. (National), but had finished her shift and had gone grocery shopping prior to leaving. While being

questioned regarding the bottle of diet pills, she was asked about rumors heard by management that she had illegally taken things at other times. She was subsequently tried and acquitted of committing retail theft under section 16A–3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 16A–3). She filed a two-count complaint alleging slander in count I and malicious prosecution in count II. Although the parties differ significantly in their respective versions of the facts, certain facts are undisputed. Because we find the undisputed facts determinative in our holdings, we need not recite all the background details found in the record.

On December 29, 1982, plaintiff ended her shift at work at 8:30 p.m. and proceeded to grocery shop. As she approached aisle 12, plaintiff remembered seeing the store detective standing in the glassed-in area of the pharmacy. She picked up a package of diet pills from the pharmacy area, although she had never purchased diet pills before. She stated that she put the pills in the front part of her cart where a baby would sit. She then went to the checkout lanes. As she was standing in line, she put the pills in her purse because she did not want her friends who were working as cashiers making fun of her for buying diet pills. She also did not want her husband to know about the pills. According to plaintiff, the store did not have a policy which required that every item be physically given to the cashier. She remembered seeing the store detective watch her check her groceries out. Plaintiff testified that she told the cashier, Bonnie Marconi, to ring "$3.79 Kare." Kare was the code for health and beauty items. Plaintiff stated that her purse was on the checkwriting platform and that her total bill was over $50.00. She paid in cash, which she produced from her purse.

Bob Fitzsimmons, the store detective, testified to watching plaintiff take a bottle of diet pills from the pharmacy area and carry them outside of the cart to the next aisle, aisle 11. He followed her, being careful not to be seen. He stated that she put the pills in her purse, zipping them inside. She then proceeded to the checkout lanes. Fitzsimmons followed her and watched her check out her groceries for a short period. He went to report what he had seen to the associate manager, James Cripe, and returned to watch plaintiff finish checking out her groceries. Before he followed plaintiff outside to the parking lot, he asked Marconi if she recalled ringing up diet pills. She said she did not. Fitzsimmons proceeded to the parking lot and confronted plaintiff regarding the pills. Fitzsimmons testified that plaintiff produced her receipt and he checked it for an item listed as $3.79 Kare. He found no such item listed. Plaintiff testified that neither Fitz-

simmons nor anyone else looked at the receipt at the store that night. She never thought to check the receipt herself that evening or during the next few days because of the anxiety and stress produced by her arrest. The receipt was lost and probably discarded.

Fitzsimmons brought plaintiff back to the manager's office, where Cripe questioned her. During the conversation, plaintiff stated to Cripe that she had told Marconi to ring the pills through the register. Marconi was summoned and asked whether she recalled plaintiff asking her to ring "$3.79 Kare." She said no. Cripe made several phone calls to Fred Hillebrandt, the store's manager, that evening regarding the matter of plaintiff's alleged theft of diet pills. During one of the phone calls, Hillebrandt brought up a rumor regarding plaintiff stealing items from the store in the past. Hillebrandt testified that he told Cripe to ask her about the rumor since she was already being detained for theft. Cripe testified that he could not recall Hillebrandt's exact statement to him, nor could he recall his statement to plaintiff. Plaintiff testified that Cripe's statement to her was as follows: "[Hillebrandt] had it from reliable sources that they've seen [plaintiff] taking things and to go ahead and treat [her] as though [she] was a regular customer." This statement forms the basis for the slander claim. Plaintiff stated that Marconi was still present when Cripe made the statement. Although Marconi testified at trial, neither counsel asked her whether she was present.

Plaintiff was arrested and tried on a charge of retail theft under section 16A—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 16A—3). She was acquitted. She was also discharged from her job. Plaintiff testified to the humiliation she felt about being arrested and tried.

Three days prior to the start of the trial, defendants filed a "first amended answer" which added an affirmative defense. Defendants added as an affirmative defense to both the slander and malicious-prosecution claims that plaintiff was estopped from bringing the causes of action because the issues raised had been brought through arbitration as provided by a collective-bargaining agreement applicable to plaintiff. The agreement was not attached.

On October 21, 1985, the first day of trial, plaintiff filed a "motion to strike and answer to affirmative defense." The motion to strike stated that defendants failed to attach the collective-bargaining agreement as required by section 2—606 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—606). Also filed by plaintiff on that day was a "motion *in limine*" to prohibit defendants from "presenting evidence, argument or comment to the jury, *** concern-

ing the filing of or the outcome of any labor union arbitration proceedings arising out of the discharge of the plaintiff." The court granted plaintiff's motion to strike affirmative defense and motion *in limine*.

During the trial, defense counsel made an offer of proof regarding the evidence of the arbitrator's decision. The arbitrator had found that National made a clear and convincing case for discharging plaintiff and that plaintiff did not intend to purchase the pills when she left the store. The record is not clear what ruling the court eventually made. However, it does not appear that the evidence was submitted to the jury.

Plaintiff sued three defendants. The jury found for James Cripe, the assistant manager on both claims. Damages of $20,000 were assessed against Hillebrandt and National on the slander claim. On the malicious-prosecution claim, the jury assessed $150,000 against Hillebrandt and National. The jury further assessed punitive damages of $20,000 against Hillebrandt and $60,000 against National on the malicious-prosecution claim.

The court denied defendants' motions for a directed verdict during trial as well as the post-trial motion for entry of judgment. Defendants filed a timely appeal.

On appeal defendants raised arguments for 16 alleged errors. The errors tend to overlap one another, and our initial holdings make the need to answer all 16 unnecessary. We outline this opinion as follows: (1) whether a directed verdict should have been issued on the malicious-prosecution claim, (2) whether the evidence of the arbitration proceedings should have been admitted, (3) whether a directed verdict should have been issued on the slander claim, (4) whether the court erred in accepting plaintiff's jury instructions, and (5) whether the jury verdict was excessive. We begin with the claim of malicious prosecution.

■■ ■ The elements of malicious prosecution are (1) the commencement or continuation of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice on the part of the defendant; and (5) damages resulting to the plaintiff. (*Turner v. City of Chicago* (1980), 91 Ill. App. 3d 931, 415 N.E.2d 481.) Probable cause is defined as "a state of facts, in the mind of the prosecutor, as would lead a man of ordinary caution and prudence to believe or entertain an honest and sound suspicion that the person accused is guilty of the offense charged." (*Carbaugh v. Peat* (1963), 40 Ill. App. 2d 37, 47, 189

N.E.2d 14, 19.) The existence of probable cause acts as a complete defense to an action for malicious prosecution, no matter what ill motive prompted the prosecution. (*Mangus v. Cock Robin Ice Cream Co.* (1977), 52 Ill. App. 3d 110, 367 N.E.2d 203; *Horvat v. Opas* (1942), 315 Ill. App. 229, 42 N.E.2d 867.) It is not necessary to verify the correctness of each item of information so obtained; it is sufficient to act with reasonable prudence and caution in so proceeding. (*Turner v. City of Chicago* (1980), 91 Ill. App. 3d 931, 415 N.E.2d 481; *Mangus v. Cock Robin Ice Cream Co.* (1977), 52 Ill. App. 3d 110, 367 N.E.2d 203.) "The question of probable cause as an element of the cause of action for malicious prosecution is a mixed question of law and fact. Whether the circumstances proved to show probable cause are true is a question of fact, but, if true, whether they amount to probable cause is a question of law to be decided by the court." (25 Ill. L. & Prac. *Malicious Prosecution* sec. 42 (1956); *Angelo v. Faul* (1877), 85 Ill. 106; *Jacks v. Stimpson* (1852), 13 Ill. 701.) Probable cause is determined at the time of subscribing a criminal complaint: "[There must be] an honest belief by the complaint at the time of subscribing a criminal complaint that another is probably guilty of an offense; it is immaterial that the accused may thereafter be found not guilty." *Mangus v. Cock Robin Ice Cream Co.* (1977), 52 Ill. App. 3d 110, 116, 367 N.E.2d 203, 207.

In this case the plaintiff was prosecuted for retail theft under section 16A–3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 16A–3), which provides, in pertinent part:

"A person commits the offense of retail theft when he or she knowingly:

(a) Takes possession of *** any merchandise *** offered for sale in a retail mercantile establishment with the intention of retaining such merchandise or with the intention of depriving the merchant permanently of the possession *** of such merchandise without paying the full retail value ***."

Section 16A–4 (Ill. Rev. Stat. 1981, ch. 38, par. 16A–4) contains a presumption to be applied for retail theft:

"If any person:

(a) conceals upon his or her person or among his or her belongings, unpurchased merchandise *** offered for sale in a retail mercantile establishment; and

(b) removes that merchandise beyond the last known station for receiving payments for that merchandise in that retail mercantile establishment such person shall be presumed to have possessed *** such merchandise with the intention of retaining

it or with the intention of depriving the merchant permanently of the possession *** of such merchandise without paying the full retail value ***."

Section 16A—5 (Ill. Rev. Stat. 1981, ch. 38, par. 16A—5(c)) allows a merchant to detain an individual for investigation:

"Any merchant who has reasonable grounds to believe that a person has committed retail theft may detain such person *** in a reasonable manner and for a reasonable length of time for *** the following purposes:

* * *

(c) To make reasonable inquiry as to whether such person has in his possession unpurchased merchandise and, to make reasonable investigation of the ownership of such merchandise."

Defendants argue the uncontroverted facts prove probable cause as a matter of law and that a directed verdict should have been entered in defendants' favor on the malicious-prosecution claim. We agree. In order to decide this issue, we view the facts under the well-known standard for directed verdicts. (See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Although certain conversations between plaintiff on the one hand and Fitzsimmons and Cripe on the other are disputed, the uncontroverted facts prove probable cause as a matter of law. Plaintiff admits that she concealed pills in her purse. She testified that she told the cashier, Marconi, to ring $3.79 Kare. It is uncontroverted, however, that Marconi believed she did not register the pills. Plaintiff and Marconi, as well as defendant Cripe, testified that Marconi responded "no" when asked whether the pills were rung through the register that evening. In addition, both Marconi and Fitzsimmons testified that Fitzsimmons questioned Marconi before heading to the parking lot to confront plaintiff. Marconi consistently stated that she did not ring a $3.79 health and beauty item through the register. Moreover, Cripe took every reasonable step to verify the facts at hand. Plaintiff offered only one justification, and Cripe followed up on it by summoning Marconi to question her.

■ The above facts do not demonstrate guilt or innocence; that was determined by a jury when plaintiff was tried and acquitted of the charge of retail theft. The above facts do demonstrate, however, probable cause as a matter of law. Defendants have shown a set of facts which create a reasonable suspicion that on the night of December 29, 1982, plaintiff attempted to steal a bottle of diet pills. Moreover, the statutory presumptions pertaining to retail theft are meant to guide merchants. The factual situation before us falls directly un-

der those presumptions. That defendants chose to exercise the discretion permitted by the statute over a $3.79 bottle of diet pills is irrelevant. Defendants should not be punished for following the guidance of the statute. We therefore hold that a directed verdict should have been entered for defendants on the malicious-prosecution claim and reverse the damages award given by the lower court.

■ We next deal with the question of the arbitrator's determination and its relevance to this appeal. The trial court granted plaintiff's motion to strike affirmative defense and motion *in limine*. The combined effect of these rulings was to prohibit defendants from using the arbitration proceedings as evidence at trial.

In addition, defendants made an offer of proof to the court that the arbitrator's decision should be submitted to the jury. The exhibits were admitted into evidence for the limited purpose of the offer of proof, but the record does not show a final ruling by the trial court. We assume the court rejected the offer of proof as the record does not indicate the jury received evidence or heard argument based on the arbitrator's decision. For future guidance to the trial courts, we would require a ruling on an offer of proof even though a ruling has been made on the same matter via a motion *in limine*. A motion *in limine* is a preliminary ruling which the court may change as the evidence in the trial is fully developed. In this case, defendants, in effect, asked for a change in the court's initial ruling through the offer of proof. The court heard the argument, but the record does not indicate an explicit ruling on defendants' offer.

The arbitrator made a determination that plaintiff had been discharged for just cause. After plaintiff's acquittal of the criminal charge, the union filed a grievance on her behalf arguing that she should be reinstated with full back pay. The matter went to arbitration pursuant to a contract term of "final and binding arbitration." The arbitrator determined that plaintiff had been discharged for just cause and denied the grievance.

While we believe the evidence was relevant to the case, we do not go as far in our holding as defendants urge. Defendants argue that the arbitrator's decision on the matter of a discharge for just cause was the same as deciding the element of malice in the malicious prosecution and slander claims. Therefore, both causes of action were barred from relitigation under the principles of *res judicata*. Therefore, continue defendants, it was error to strike the affirmative defense. Defendants cite as support cases dealing with the relationship between the tort of retaliatory discharge and an arbitrator's determination on a question of discharge for just cause.

We find the relationship between the independent torts of malicious prosecution and slander and a labor arbitrator's decision is not analogous to the relationship between retaliatory discharge and an arbitrator's determination on discharge for just cause. *Res judicata* involves estoppel by judgment and estoppel by verdict. Neither of these principles apply in this case. Estoppel by judgment means a bar to relitigation between the same parties of the same cause of action. (*Keim v. Kalbfleisch* (1978), 57 Ill. App. 3d 621, 373 N.E.2d 565.) This is clearly not the same cause of action. Estoppel by verdict is a bar to relitigation between the same parties of the same question or fact in the same or different cause of action. (*Lange v. Coca-Cola Bottling Co.* (1969), 44 Ill. 2d 73, 254 N.E.2d 467.) We find the question decided by the arbitrator was not the same as any of the questions posed to the jury under the malicious prosecution or slander causes of action. It was not error, therefore, to strike the affirmative defense.

■ We do find the arbitrator's determination relevant to the element of want of probable cause in the malicious-prosecution claim. The arbitrator's finding that National discharged plaintiff for just cause should have been submitted to the jury as additional evidence of probable cause to detain and arrest plaintiff for retail theft. The court's grant of the motion *in limine* and rejection of the argument and evidence in the offer of proof were errors. Because we have already held that there was probable cause as a matter of law, the errors were harmless.

■ Turning to the slander claim, defendants raise several arguments that the court should have directed a verdict in their favor. The allegedly slanderous statement is somewhat disputed and, for the purposes of the directed verdict standard, we accept plaintiff's version: "[Cripe] said that Fred [Hillebrandt] had it from reliable sources that they've seen me taking things and to go ahead and treat me as though I were a regular customer."

Defendants argue that plaintiff never proved publication. They contend the evidence that Marconi, the cashier, was present when the statement was made is insufficient as a matter of law. Plaintiff testified that Marconi was present. No other evidence was offered. Cripe was never asked whether Marconi was present when he made the statement. Marconi testified at trial yet was not asked by either counsel whether she was present. Defendants argue plaintiff did not meet her burden of proof on the element of publication because plaintiff should have questioned Marconi while she was on the stand. We disagree.

Publication is an essential element in the law of defamation. In or-

der for there to be publication, there must be a communication of the statement to someone other than plaintiff and defendant. (*Frank v. Kaminsky* (1884), 109 Ill. 26.) Defendants cite an Iowa case to argue plaintiff did not meet her burden of proof. (*Royston v. Vander Linden* (1924), 197 Iowa 536, 197 N.W. 435.) The plaintiff in *Royston* asserted that the slanderous statement was heard by two individuals. It was apparent from the evidence that one individual was present during the conversation, that is, within the presence and hearing of the conversation. Plaintiff, however, produced both witnesses at trial and both testified that they did not hear the slanderous statements. The court held plaintiff failed to prove publication. The instant case is distinguishable. Plaintiff's testimony is unrebutted. Her testimony alone is sufficient to prove publication. Defendants could have tried to rebut her assertion but chose to not do so. We find that plaintiff sufficiently proved publication to Marconi.

It is clear the statement was published to Cripe. With respect to Cripe, defendants argue that the communication received from Hillebrandt was subject to a conditional privilege. Because we hold that the statement was published to Marconi, we need not decide the question of a conditional privilege. The communication to Marconi was clearly not privileged. Marconi was not part of the managerial staff.

■ Defendant next argues that the statement was not defamatory. Both Cripe and Marconi were in the office for an investigation of whether plaintiff had shoplifted a bottle of diet pills. Defendant contends that the statement could not further damage plaintiff's reputation. We find, however, that plaintiff's version of the statement attributes a history of shoplifting to plaintiff rather than merely focusing on one incident. A jury could reasonably find the statement defamed plaintiff beyond what could be associated with the scope of the investigation.

■ Finally, defendants argue the statement is not slander *per se*. Where words are actionable *per se*, malice and special damages need not be proved. (*Stanley v. Taylor* (1972), 4 Ill. App. 3d 98, 278 N.E.2d 284.) There are four categories of words which are actionable *per se*. The two classes relevant in this case are (1) words imputing the commission of a criminal offense and (2) words imputing inability to perform or want of integrity in the discharge of duties of office or employment. (See *Coursey v. Greater Niles Township Publishing Corp.* (1967), 82 Ill. App. 2d 76, 227 N.E.2d 164.) In order to constitute slander *per se* for imputing the commission of a crime, the crime must be an indictable one, involving moral turpitude and punishable by death or by imprisonment otherwise than in lieu of a fine. (*Mitchell v.*

*Peoria Journal-Star, Inc.* (1966), 76 Ill. App. 2d 154, 221 N.E.2d 516.) A statement is to be considered in the context in which it is spoken. *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 442 N.E.2d 195.

■ We find that plaintiff's version of the statement is actionable *per se* under both classes. Viewing the statement within context, there is no doubt plaintiff is accused of stealing from her employers. It clearly disparages plaintiff's character as an employee. Moreover, the statement imputes to plaintiff the crime of theft. The accusation of stealing newspapers from other tenants in an apartment building has been held sufficient to imply a crime grievous enough to be slander *per se*. (*Bradley v. Bakke* (1940), 306 Ill. App. 569, 29 N.E.2d 300.) Thus, we do not find the imputation of shoplifting at a supermarket too meaningless to be held actionable *per se*. The specific crime, retail theft, is punishable by imprisonment. Retail theft is a Class A misdemeanor, punishable by up to one year's imprisonment. (Ill. Rev. Stat. 1981, ch. 38, pars. 16A—10, 1005—8—3.) A second offense is a Class 4 felony. Ill. Rev. Stat. 1981, ch. 38, par. 16A—10(2).

In sum, plaintiff has shown the statement to be published to a third party, to be defamatory, and to be actionable *per se*. Defendants are not entitled to a directed verdict on the claim of slander.

Defendants raised several arguments pertaining to errors in the jury instructions. Because of our previous holdings, we need respond to only two.

■ Defendants argue the trial court erred in accepting plaintiff's instruction on the elements of slander. The trial court accepted plaintiff's instruction and rejected defendants' instruction. Defendants made the specific objection at trial of the failure to include the element of publication. Suffice it to say, the element is obliquely referred to at best. As we earlier stated, publication is an essential element in the law of defamation. Because we have concluded that the evidence was sufficient to prove Marconi was present, the error in not including the element of publication in plaintiff's jury instruction is harmless.

■ Defendants offered their instruction on the elements of slander. That instruction included the element of publication. Defendants' instruction was peremptory in form, however. Peremptory instructions are frowned on by the courts. (*Del Raso v. Elgin, Joliet & Eastern Ry. Co.* (1967), 84 Ill. App. 2d 344, 228 N.E.2d 470.) Bearing in mind our holding on the element of publication above, we would prefer plaintiff's version over defendants' peremptory form. We find no error in the trial court's choice of plaintiff's instruction.

Defendants next object to the trial court's refusal to offer their

764

instruction on the affirmative defense of truth. However, plaintiff's instruction included this defense. There was no need to duplicate instructions. Moreover, the instruction was peremptory. We find no error.

Finally, defendants argue the jury award was excessive. We need only consider the slander claim in this argument. The jury awarded $20,000 damages for slander. Damages are presumed in a case of slander *per se.* (*Coursey v. Greater Niles Township Publishing Corp.* (1967), 82 Ill. App. 2d 76, 227 N.E.2d 164.) Also, the amount of damages is within the province of the jury, and we find the award of $20,000 is not excessive.

Accordingly, that part of the judgment of the circuit court of Sangamon County awarding actual and punitive damages for malicious prosecution is reversed and that part of the judgment awarding actual damages for slander is affirmed.

Reversed in part and affirmed in part.

MORTHLAND and SPITZ, JJ., concur.