VOY E. MACK, Plaintiff-Appellant, v. FIRST SECURITY BANK OF CHICAGO, Defendant-Appellee.

First District (4th Division)   No. 85—3065

Opinion filed June 30, 1987.—Rehearing denied August 24, 1987.

Joel S. Ostrow and Gus Giannis, both of Chicago, for appellant.

Crooks & Gilligan, Ltd., of Chicago (John W. Gilligan, Joseph R. Steiger, and John J. Daley, of counsel), for appellee.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

Plaintiff Voy E. Mack (Mack) was charged with and tried for forgery and theft in criminal proceedings which were instituted on the complaint of defendant First Security Bank of Chicago (bank). Upon her acquittal of the criminal charges, she brought this action against defendant bank for malicious prosecution. At the close of Mack's case in the malicious prosecution action, the trial court found that Mack had failed to present any evidence of malice in connection with the bank's institution of the criminal proceedings, and the trial court granted the bank's motion for directed verdict. Mack appeals from the trial court's entry of a directed verdict in favor of the bank and from the trial court's denial of Mack's motion for a new trial. Mack raises two issues on appeal: (1) whether the trial court's entry of a directed verdict should be reversed; (2) whether the trial court's refusal to admit evidence of the bank employee's racial views was prejudicial error. We reverse and remand.

BACKGROUND

Mack's complaint for malicious prosecution alleged that the bank or its agents initiated her prosecution out of improper motives. The complaint specifies: (1) that the bank was prejudiced against her because she was black, (2) that the bank was seeking to recover the financial loss it sustained when it accepted forged and insufficient funds checks, and (3) that by prosecuting her the bank was diverting suspicion of complicity by its own employees. Before the tort went to trial, the trial court granted the bank's motion in limine to preclude Mack from eliciting testimony regarding or alluding to her race and the bank employee's expressed opinions about blacks.

The evidence produced at trial by plaintiff established the following: In 1978, Mack opened both a checking account and a savings account at the bank. During October 1978, an assistant vice-president of the bank, Vic Zezelic (Zezelic), told Kathy Ruppert (Ruppert), a teller at the bank, that deposits made at her window into a certain account in September were made with checks bearing forged signatures or which were drawn on accounts with insufficient funds. On October 30, 1978, Ruppert saw Mack in the bank and believed that it was Mack who had cashed a check bearing a forged endorsement at her window and who had deposited an insufficient funds check into the account which Zezelic mentioned to her. After Mack completed her transaction at another teller's window and left the bank, Ruppert went to that window, looked at Mack's transaction slip, and saw

Mack's name. She told Zezelic that Mack was the woman who had deposited or cashed two forged or insufficient funds checks in September.

The evidence also disclosed that Zezelic called the police after Ruppert identified Mack as the woman who deposited the forged or insufficient funds checks. Ruppert went with a police officer to the office of Mack's employer and identified Mack's photograph from a collection of six or eight photographs of women. Zezelic looked at Mack's signature card and her new account sheet, but he did not have a handwriting expert compare and verify that it was Mack's handwriting on the forged checks nor did he call Mack in for an interview or in any way question her. The bank sustained a loss of $1,810 as a result of the fraudulent transactions, a loss not covered by the bank's insurance. Zezelic also testified that Ruppert told him, prior to the time he signed the criminal complaint, that she identified Mack by "the eyelashes, the eye make-up and also the color of the hair." His testimony further indicated that, at the time he signed the complaint, he knew that only Ruppert's uncorroborated identification implicated Mack.

Ruppert testified in the criminal and civil proceedings that she remembered Mack's September transaction because Mack made a large deposit and it was unusual for the bank's minority clientele to make large deposits; that in Ruppert's opinion, they usually would deposit $5 into their accounts and take the balance of their checks in cash. At both the preliminary hearing and at the criminal trial, Ruppert identified Mack as the person who presented the insufficient funds or forged checks to the bank.

Mack was acquitted in a bench trial of all criminal charges brought by the bank.

At the close of the plaintiff's case in the malicious prosecution action, the bank moved for a directed verdict. The court found that although Mack had presented enough evidence of the bank's lack of probable cause to institute the criminal proceedings to submit that issue to the jury hearing the malicious prosecution action, Mack presented no evidence of the bank's malice in instituting the criminal proceedings. The trial court then granted the motion and directed a verdict for the bank. Mack filed a motion for a new trial. After the trial court denied her motion, Mack timely filed this appeal.

OPINION

Mack argues that the trial court erred in directing a verdict for the bank. Mack contends that in ruling on a motion for directed ver-

dict the trial court must draw all reasonable inferences in favor of the litigant opposing the motion, and that the malicious prosecution trial jury might permissibly infer malice if the jury were to find that the bank lacked probable cause to institute the criminal action. Based on these propositions and on the trial court's finding that there existed a jury question regarding the bank's want of probable cause, Mack asserts that the trial court's entry of a directed verdict for the bank was error. We agree.

■ We stress that the resolution of this case is determined by the posture in which it comes before us for review. The matter comes before us for review of the trial court's entry of a directed verdict in favor of the defendant at the close of the plaintiff's case. Thus, in considering the propriety of the trial court's entry of a directed verdict, we must view the evidence in its light most favorable to the plaintiff and draw all reasonable inferences from that evidence in favor of the plaintiff. *Roeseke v. Pryor* (1987), 152 Ill. App. 3d 771, 777, 504 N.E.2d 927.

■ The elements of a malicious prosecution action are (1) the commencement or continuation of an original criminal or civil judicial proceeding by defendant; (2) the termination of proceedings in favor of the plaintiff; (3) the absence of probable cause for such proceedings; (4) the presence of malice in the institution of the original action; and (5) damages resulting to plaintiff. *Joiner v. Benton Community Bank* (1980), 82 Ill. 2d 40, 45, 411 N.E.2d 229; *Ely v. National Super Markets, Inc.* (1986), 149 Ill. App. 3d 752, 757, 500 N.E.2d 120.

■ Two elements of a malicious prosecution action are at issue in the instant cause: the presence of malice and the absence of probable cause. Malice, as an element of malicious prosecution, is defined as the actuation of a prosecution for an improper motive. (*Glenn v. Lawrence* (1917), 280 Ill. 581, 587, 117 N.E. 757; *Turner v. City of Chicago* (1980), 91 Ill. App. 3d 931, 935, 415 N.E.2d 481.) An improper motive for a prosecution is any reason other than to bring the party to justice. (*Robinson v. Econ-O-Corporation, Inc.* (1978), 62 Ill. App. 3d 958, 961, 379 N.E.2d 923.) Malice may be inferred from the absence of probable cause when the circumstances are inconsistent with the prosecutor's good faith and where the lack of probable cause has been clearly proved. *Denton v. Allstate Insurance Co.* (1986), 152 Ill. App. 3d 578, 587, 504 N.E.2d 756; *Turner v. City of Chicago* (1980), 91 Ill. App. 3d 931, 937, 415 N.E.2d 481; *Mangus v. Cock Robin Ice Cream Co.* (1977), 52 Ill. App. 3d 110, 367 N.E.2d 203; but see *Kaiman v. Myers* (1987), 189 Cal. App. 3d 1251, ___, 234 Cal.

Rptr. 758, 766.

■ Probable cause is a state of facts, in the prosecutor's mind, that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged. (See *Freides v. Sani-Mode Manufacturing Co.* (1965), 33 Ill. 2d 291, 295-96, 211 N.E.2d 286; *Ely v. National Super Markets, Inc.* (1986), 149 Ill. App. 3d 752, 757, 500 N.E.2d 120.) The existence of probable cause is a mixed question of law and fact. (*Schattgen v. Holnback* (1894), 149 Ill. 646, 652-53, 36 N.E. 969; *Ely v. National Super Markets, Inc.* (1986), 149 Ill. App. 3d 752, 758, 500 N.E.2d 120; see also 9 Wigmore, Evidence sec. 2554, at 683 (Chadbourn rev. ed. 1981); Restatement (Second) of Torts sec. 673, comment *e*, at 449-50 (1977); Pool, *Malicious Prosecution in Illinois: Wrong Without a Remedy*, 69 Ill. B.J. 754, 759-61 (1981).) Probable cause is determined as of the time the prosecutor signs the criminal complaint. *Ely v. National Super Markets, Inc.* (1986), 149 Ill. App. 3d 752, 758, 500 N.E.2d 120.

■ In the instant case, the trial court found enough evidence of the bank's lack of probable cause to submit that issue to the jury; however, the trial court also found no evidence of malice. Because malice may be inferred from the lack of probable cause (see *Turner v. City of Chicago* (1980), 91 Ill. App. 3d 931, 937, 415 N.E.2d 481; *Mangus v. Cock Robin Ice Cream Co.* (1977), 52 Ill. App. 3d 110, 117, 367 N.E.2d 203) and every reasonable inference is to be made in favor of the plaintiff on a motion for directed verdict (see *Roeseke v. Pryor* (1987), 152 Ill. App. 3d 771, 777, 504 N.E.2d 927), it was error for the trial court to direct the jury's verdict.

The bank argues that even if the issue of probable cause was resolved against it, the directed verdict should not be overturned because Mack failed to show that the bank lacked good faith. Unless the circumstances of the prosecution are inconsistent with good faith on the part of the prosecutor, malice may not be inferred. (See *Turner v. City of Chicago* (1980), 91 Ill. App. 3d 931, 937, 415 N.E.2d 481; *Mangus v. Cock Robin Ice Cream Co.* (1977), 52 Ill. App. 3d 110, 117, 367 N.E.2d 203.) The trial court found that Mack had presented no evidence of the bank's lack of good faith. Although Mack failed to affirmatively demonstrate by direct evidence the bank's lack of good faith in instituting the criminal proceedings, the circumstances of the bank's prosecution of Mack might be found by a jury to be inconsistent with good faith. Under these circumstances, the trier of fact could permissibly infer malice.

Zezelic failed to corroborate Ruppert's identification of Mack with

a handwriting comparison of the forged checks with Mack's signature card or to examine Mack's September statement or to allow Mack to explain these circumstances. Zezelic admitted that when he signed the complaint against Mack he had no evidence pointing to Mack other than Ruppert's identification. Zezelic, an assistant vice-president of the bank, knew when he signed the complaint against Mack that Ruppert's identification of Mack was made on "the eyelashes, the eye make-up and also the color of the hair." The bank failed to corroborate Ruppert's identification of Mack in any way, notwithstanding that Ruppert's recollection of Mack was over a month old at the time of the identification. Moreover, the identification was based, at least partially, on Ruppert's identification of Mack as a black person who made a large deposit.

■ Although the bank's prosecution of Mack might be reconciled with the bank's professed good faith, it would not be unreasonable for a jury to find these circumstances inconsistent with good faith. It is not necessary for the party pressing criminal charges to verify the correctness of all the information upon which he bases his belief that the person accused is guilty (see *Ely v. National Super Markets, Inc.* (1986), 149 Ill. App. 3d 752, 758, 500 N.E.2d 120), but the total failure to verify any of the facts that support his belief may overstep the bounds of good faith. In addition, because the question of the bank's good faith is a factual determination, often made from circumstantial evidence, it is not suited to resolution by the trial court on directed verdict and is properly reserved to the sound discretion of the trier of fact. See *Central National Bank v. Fleetwood Realty Corp.* (1982), 110 Ill. App. 3d 169, 179, 441 N.E.2d 1244.

As an alternative ground for sustaining the directed verdict, the bank urges this court to find that it had probable cause for initiating criminal proceedings against Mack. If the uncontroverted facts prove, as a matter of law, probable cause to institute the underlying action, a directed verdict in favor of the prosecution should be ordered. (*Ely v. National Super Markets, Inc.* (1986), 149 Ill. App. 3d 752, 759, 500 N.E.2d 120.) When viewed in the light most favorable to Mack, the evidence shows that the uncorroborated identification of her based on a month-old recollection of a brief encounter was the only link between Mack and the forgeries and thefts. We do not hold that an uncorroborated identification of an offender one month after the crime occurred cannot be sufficient to establish probable cause. However, based on the record in the instant case, we are unable to conclusively determine that the bank had, as a matter of law, probable cause to institute the criminal proceedings. For the foregoing reasons, we can-

not find that all the evidence, when viewed in light most favorable to Mack, so overwhelmingly favors the bank that a contrary verdict could not stand. We hold that the trial court erred in directing a verdict for the bank.

■■ Consideration of the trial court's order precluding all reference to the bank employee's alleged racist sentiments is unnecessary to our resolution of this case. However, because the issue may arise again on remand, we address it. It is improper for the court to allow a motion *in limine* which limits or refuses the introduction of relevant admissible evidence. *Cf. Lundell v. Citrano* (1984), 129 Ill. App. 3d 390, 396, 472 N.E.2d 541.

■■ ■ Generally, each party is entitled to present evidence which is relevant to its theory of the case. (*Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 982, 466 N.E.2d 958, *appeal denied* (1984), 101 Ill. 2d 581.) Some evidence, however, is so prejudicial that more than mere relevance must be shown to allow its admission. (*Sandburg-Schiller v. Rosello* (1983), 119 Ill. App. 3d 318, 331, 456 N.E.2d 192, *appeal denied* (1984), 99 Ill. 2d 535.) The probative value of admitting such evidence must outweigh the danger of unfair prejudice, and where the probative value does not outweigh the prejudicial effect of such evidence, the trial court may properly deny introduction of such evidence. (*Hengels v. Gilski* (1984), 127 Ill. App. 3d 894, 911, 469 N.E.2d 708, *appeal denied* (1985), 101 Ill. 2d 589.) Evidence of prior discriminatory conduct or of statements condoning or advocating discrimination are admissible to show motive. *LaDolce v. Bank Administration Institute* (N.D. Ill. 1984), 585 F. Supp. 975, 977.

■■ Because Mack alleged that one of the improper motives that actuated the bank's prosecution of her was the bank employee's prejudice against blacks, testimony and questions regarding the bank employee's views regarding black persons' banking habits were relevant to Mack's cause of action. At Mack's criminal trial, Ruppert testified to her beliefs regarding the banking habits of blacks. Her testimony at the criminal trial may establish that race was a factor in the bank's decision to prosecute Mack, and the tort jury is entitled to consider such evidence. (*Cf. LaDolce v. Bank Administration Institute* (N.D. Ill. 1984), 585 F. Supp. 975, 977.) Such testimony was relevant to the issues of malice and probable cause. Under some circumstances testimony or questioning about racial prejudice might be properly excluded as irrelevant and needlessly prejudicial. (*Cf. Jackson v. Chicago Transit Authority* (1971), 133 Ill. App. 2d 529, 534, 273 N.E.2d 748.) In the instant case, however, the probative value so outweighs the potential prejudice that the testimony regarding the bank employee's al-

leged racism should have been admitted. To preclude presentation of evidence of the bank employee's view of blacks prevents Mack from introducing testimony highly relevant to the essential elements of her cause of action. We conclude that the trial court erred when it denied admission of all testimony regarding Mack's race or the bank employee's alleged racism.

For the reasons stated above, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

JOHNSON and JIGANTI, JJ., concur.