KNOX COUNTY, Plaintiff-Appellee, v. MIDLAND COAL COMPANY, Defendant (Mid State Coal Company, Defendant-Appellant; The Department of Mines and Minerals, Defendant).

Third District   No. 3—93—0900

Opinion filed August 25, 1994.

Husch & Eppenberger, of Peoria (Michael R. Lied, of counsel), for appellant.

William Morris, of Pekin, for appellee.

JUSTICE LYTTON delivered the opinion of the court:
Mid State Coal Company (Mid State) appeals from summary judgment entered in the circuit court of Knox County in favor of the County of Knox (County) on Mid State's claim for damages allegedly resulting from entry of a preliminary injunction which prevented Mid State from commencing strip mine operations pursuant to a permit issued by the Illinois Department of Mines and Minerals (Department). Mid State contends that, as a matter of law, Knox County lacked probable cause for seeking the preliminary injunction and, in the alternative, summary judgment should not have been entered before allowing Mid State to obtain discovery. We affirm.

BACKGROUND
In February of 1989 Midland Coal Company (Midland) filed an application with the Department to permit surface mining in rural Knox County by Midland and Mid State. After a public hearing, the Department issued the permit on August 10, 1992, and at that time

made a finding that Midland and Mid State possessed the technological capacity to restore prime farm land to its premining level of productivity. On September 4, 1992, Knox County filed a request for an administrative review hearing with the Department pursuant to section 2.11(c) of the Surface Coal Mining Land Conservation and Reclamation Act (Act) (225 ILCS 720/2.11 (West 1992)). Knox County sought to have all prime agricultural lands deleted from the permit area to prevent permanent diminution of the County's real estate tax base.

The chronology of subsequent events is as follows:

1. September 18—Knox County filed a petition for preliminary injunction in the circuit court of Knox County and also requested and obtained an *ex parte* temporary restraining order (TRO) barring Mid State and Midland from conducting surface mining. The Department was granted leave to intervene as a party defendant.

2. September 28—After a hearing, the court dissolved the TRO on the ground that it lacked jurisdiction to grant injunctive relief because Knox County had not exhausted its administrative remedies by seeking temporary relief from the Department under section 2.11(e) of the Act.

3. September 30—Knox County filed a petition for temporary relief with the Department, and the hearing was held before a Department hearing officer on October 5 and 8.

4. October 5—Mid State filed a complaint for declaratory judgment and injunctive relief in the circuit court of Sangamon County seeking a ruling that would allow Mid State to conduct mining operations pending any administrative hearings and appeals unless the Department ruled otherwise.

5. October 6—Upon a motion to reconsider, the circuit court of Knox County reissued the TRO enjoining Mid State from conducting mining and reclamation activities and further prohibiting Mid State from pursuing declaratory judgment and/or injunctive relief before the circuit court of Sangamon County or any other court. Mid State and Midland filed an interlocutory appeal from the TRO on the same day.

6. October 9—The Department denied Knox County's request for temporary relief pending an administrative hearing on the issuance of the permit. The administrative order included the hearing officer's finding that the County failed to provide any evidence of Mid State's inability to return the mined land to the original level of productivity within a reasonable time. Accordingly, he determined that the County failed to establish a substantial likelihood of prevailing on the merits.

7. October 13—This appellate court entered an order affirming the October 6 TRO with findings that the circuit court had jurisdiction to enter the TRO and did not abuse its discretion in doing so. The appellate court order, dated October 13, was filed in the circuit court of Knox County on October 15.

8. October 13—Knox County filed a complaint for administrative review of the Department's denial of temporary relief and a petition for preliminary injunction that would, in effect, extend the TRO.

9. October 16—After a hearing, the circuit court entered a preliminary injunction preventing mining activities until it could complete its administrative review of the Department's denial of temporary relief.

10. October 19—Mid State and Midland appealed the October 16 preliminary injunction, and on January 12, 1993, in an unpublished Rule 23 order (134 Ill. 2d R. 23), this court reversed the circuit court, ruling that the court lacked jurisdiction because Knox County had not exhausted its administrative remedies before seeking equitable relief.

11. June 29, 1993—Mid State filed its petition seeking more than $1 million in damages, alleging that Knox County sought and obtained injunctive relief maliciously and without probable cause. Mid State's claim for damages is based upon section 11—110 of the Code of Civil Procedure (735 ILCS 5/11—110 (West 1992)), which provides that after a preliminary injunction has been dissolved by the circuit court or reviewing court, the circuit court shall enter judgment for damages in favor of the party injured by the injunction.

The County moved for summary judgment, claiming immunity from liability under sections 2—109 and 2—208 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act or Immunity Act) (745 ILCS 10/2—109, 2—208 (West 1992)), which state as follows:

"§ 2—109. A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."

"§ 2—208. A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause."

The court granted the motion for summary judgment, and this appeal followed.

## PROBABLE CAUSE

Mid State contends that Knox County lacked probable cause to

obtain the preliminary injunction on October 16, 1992, and, under section 2—208 of the Tort Immunity Act, could not claim immunity. Mid State argues that Knox County knew that it had to exhaust its administrative remedies prior to seeking injunctive relief. Since the County filed its petition for administrative review of the Department's denial of temporary relief at the same time as its petition for preliminary injunction, the County obviously knew that the administrative remedy was still being pursued and was not exhausted.

The County cites an exception to the exhaustion of remedies doctrine that is recognized where irreparable harm will result from further pursuit of administrative remedies. (*Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 309, 547 N.E.2d 437, 439.) The County posits that if strip mining continued while its administrative remedies are being pursued, irreparable harm would result by depleting prime farm land which cannot be restored to its premining level of productivity. To support its position, the County relies upon the Department's own responses to issues raised at the public permit application hearing. The Department stated that prime farmland would be reclaimed only to the productivity level of Rapatee soil type. The soil productivity index used by the Department indicates that Rapatee soil has a productivity level that is 62.7% of such prime farmland soils as Tama, Ipava, and Sable, which are located on the land to be mined. Thus, the County argues that the hearing officer apparently ignored its evidence of the Department's public statements concerning productivity of the reclaimed soil when it found that the County offered no evidence of Mid State's inability to return the mined land to its original level of productivity.

The issue on appeal is whether the County had probable cause to seek a preliminary injunction continuing the temporary stay order then in effect against Mid State pending review of the Department's denial of temporary relief. Mid State admits that it has the burden of establishing that the preliminary injunction was pursued with malice and without probable cause in order to overcome the County's governmental immunity defense. The parties agree that malice is not at issue on this appeal.

In seeking the TRO, the County was not required to establish that it was entitled to relief on the merits, but needed only to show that a fair question was raised as to the existence of its right and that the court should preserve the status quo until the case could be decided on the merits. (*Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 382, 483 N.E.2d 1271, 1275; *Stanton v. City of Chicago* (1988), 177 Ill. App. 3d 519, 524, 532 N.E.2d 464, 467.) Nonetheless, in its October 6 order issuing the TRO, the trial court

specifically found that the County had "demonstrated a likelihood that it will succeed on the merits of the case." Since proof of a likelihood of ultimate success on the merits is required for a preliminary injunction (*Rosinia v. Gusmano* (1980), 90 Ill. App. 3d 882, 885, 414 N.E.2d 21, 23), from the County's perspective on October 16, the appellate court order (unpublished order entered October 13, 1992, in No. 3—92—0760) affirming the TRO appeared to justify further pursuit of the preliminary injunction.

We have found no cases interpreting probable cause as used in section 2—208 of the Immunity Act. However, probable cause has been defined in a malicious prosecution case involving criminal proceedings as "a state of facts that would lead a [person] of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person arrested committed the offense charged." (*Burghardt v. Remiyac* (1991), 207 Ill. App. 3d 402, 405, 565 N.E.2d 1049, 1052.) In a civil malicious prosecution case, probable cause was similarly defined as "such a state of facts as would lead a [person] of ordinary caution and prudence to believe that he has a justiciable claim to prosecute against the defendant." *Hulcher v. Archer Daniels Midland Co.* (1980), 88 Ill. App. 3d 1, 4, 409 N.E.2d 412, 415.

●1 Applying this "reasonably prudent person" test to the facts of the case before us, we believe the County had probable cause to persist in its request for an injunction to prevent strip mining. Although Mid State argues that we should look at the facts known by the County on October 13, the date the petition for preliminary injunction was filed, we consider the key date to be October 16, the date of the hearing and order issuing the injunction. Since the request for the preliminary injunction can be considered no more than a continuation of the previously issued temporary stay order (*Walter v. City of West Chicago* (1976), 39 Ill. App. 3d 297, 299, 349 N.E.2d 437, 439), the determinative action for the purpose of a claim for damages was the date of issuance, not the date of filing. On October 16, after this court's affirmance of the TRO was known to the parties, the County had probable cause to pursue the continuation of the injunction already in effect.

The Immunity Act serves an important governmental purpose. In *Village of Lake in the Hills v. Laidlaw Waste Systems, Inc.* (1987), 160 Ill. App. 3d 427, 513 N.E.2d 599, the Act was applied to protect a village from liability for damages resulting from the wrongful issuance of a preliminary injunction to prevent hearings on a landfill application. The court observed that "[t]he purpose of [the Immunity Act] is to shield the public decision maker from liability when making decisions assessing the public's needs so that such decisions may be

made without fear of personal liability or the second guessing of courts or juries." 160 Ill. App. 3d at 433, 513 N.E.2d at 602. See also 745 ILCS 10/2—201 (West 1992).

We agree with the trial court that no question of material fact exists relating to the issue of probable cause and, applying the provisions of the Immunity Act, the County was entitled to summary judgment.

## DISCOVERY

Mid State also contends that the trial court erred in granting summary judgment before Knox had complied with discovery requests previously submitted. Mid State had filed a motion to compel compliance with discovery, and on August 27, 1993, the trial court had ordered Knox to comply with discovery within 21 days, provided that Knox could file objections or a motion for protective order within seven days.

On September 3, 1993, Knox filed both its motion for summary judgment and a motion for protective order. In the latter motion, Knox asserted that the sole issue presented by the motion for summary judgment was whether the TRO had provided probable cause for pursuit of the preliminary injunction and further discovery would be needlessly burdensome.

Most of Mid State's discovery requests were intended to reveal the state of mind of County officials to determine their intent when deciding to pursue injunctive relief in the courts. The information sought would be relevant to the issue of malice but is of doubtful relevancy to the issue of probable cause. The absence of probable cause cannot be inferred from malice. *Brown v. Smith* (1876), 83 Ill. 291, 293; *McElroy v. Catholic Press Co.* (1912), 254 Ill. 290, 294, 98 N.E. 527, 528.

Mid State also sought to discover whether Knox County had purchased insurance or entered into any other contract which would amount to a waiver of the defense of governmental immunity. (See *Turpen v. City of St. Francisville* (1986), 145 Ill. App. 3d 891, 896, 495 N.E.2d 1351, 1354.) The purchase of insurance is no longer an automatic waiver of immunity (see 745 ILCS 10/9—103(c) (West 1992)), absent some specific contractual waiver provision. *Burley v. On the Waterfront, Inc.* (1992), 228 Ill. App. 3d 412, 418-19, 592 N.E.2d 623, 627.

●2 Mid State relies upon *Cole Taylor Bank v. Corrigan* (1992), 230 Ill. App. 3d 122, 595 N.E.2d 177, where the court held that denial of a motion to continue the plaintiff's summary judgment motion was error because discovery was necessary to respond to the motion for

summary judgment. Unlike *Cole Taylor Bank*, Mid State made no motion to continue the summary judgment hearing but rather responded at length to the issues raised by the summary judgment motion. On the record before us, we believe Mid State has failed to show a compelling need to complete discovery in order to respond. We conclude that the trial court did not err in entering summary judgment without ruling on the disputed discovery request then pending.

For the reasons stated, we affirm the judgment of the circuit court of Knox County in favor of the County of Knox.

Affirmed.

BRESLIN and McCUSKEY, JJ., concur.