# Illinois Official Reports

## Appellate Court

---

### *Gruby v. Department of Public Health*,
### 2015 IL App (2d) 140790

---

| | |
|---|---|
| Appellate Court Caption | MARVIN GRUBY, Plaintiff-Appellant, v. THE DEPARTMENT OF PUBLIC HEALTH, LAMAR HASBROUCK, in His Official Capacity as Director of Public Health, and MANORCARE HEALTH AND REHABILITATION SERVICES, d/b/a Manorcare Highland Park, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-14-0790 |
| Filed<br>Modified upon denial<br>of rehearing | March 26, 2015<br><br>June 17, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 14-MR-0354; the Hon. Christopher C. Starck, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Suzanne Courtheox and Emiliya Gumin Farbstein, both of Legal Assistance Foundation, and Kristi L. Nelson and Jennifer M. Schwartz, both of Chen Nelson Roberts, Ltd., both of Chicago, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (Carolyn E. Shapiro, Solicitor General, and Frank Bieszczat, Assistant Attorney General, of counsel), for appellees Lamar Hasbrouck and Department of Public Health.<br><br>Matthew R. Heimlich, of McVey & Parsky, LLC, of Chicago, for appellee Manorcare Health and Rehabilitation Services. |

Panel                                   JUSTICE ZENOFF delivered the judgment of the court, with opinion. Justices Hutchinson and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1         In this administrative review action, plaintiff, Marvin Gruby, contends that defendant the Illinois Department of Public Health (Department) violated provisions of the Illinois Nursing Home Care Act (Act or Nursing Home Care Act) (210 ILCS 45/1-101 *et seq.* (West 2012)) and the federal Nursing Home Reform Amendments (Pub. L. No. 100-203, §§ 4201-4218, 101 Stat. 1330 (1987) (codified as amended in scattered sections of 42 U.S.C.)). He maintains that the violation occurred when the Department declined to complete a hearing on his involuntary transfer or discharge from a nursing facility owned by defendant Manorcare Health and Rehabilitation Services, d/b/a Manorcare Highland Park (Manorcare). According to plaintiff, he had a right to a hearing even though Manorcare had withdrawn its notice of involuntary transfer or discharge, because Manorcare simultaneously refused to readmit him to the facility following a brief hospitalization. For the following reasons, we affirm.

¶ 2                                 I. BACKGROUND

¶ 3         Plaintiff became a resident of Manorcare's Highland Park facility in August 2012. On October 7, 2013, Manorcare delivered to plaintiff a notice of involuntary transfer or discharge, as contemplated by section 3-402 of the Act (210 ILCS 45/3-402 (West 2012)) and by 42 U.S.C. § 1396r (42 U.S.C. § 1396r(c)(2)(B) (2012)). The notice was on a Department form and indicated that Manorcare sought to transfer or discharge plaintiff because "the safety of individuals in this facility is endangered" (see 42 U.S.C. § 1396r(c)(2)(A)(iii) (2012)) and because "the health of individuals in the facility would otherwise be endangered, as documented by a physician in [plaintiff's] clinical record" (see 42 U.S.C. § 1396r(c)(2)(A)(iv) (2012)). Pursuant to section 3-410 of the Act (210 ILCS 45/3-410 (West 2012)), plaintiff timely filed a request for a hearing with the Department.

¶ 4         A hearing commenced but was continued for various reasons. On February 9, 2014, before the hearing was completed, plaintiff entered Northwestern Memorial Hospital for a preplanned surgical procedure. Two days later, Manorcare informed plaintiff that it would not allow him to return to the facility upon his discharge from the hospital. Plaintiff's counsel e-mailed Manorcare's counsel, asserting that plaintiff was entitled to a 10-day bed hold during his hospitalization, pursuant to section 3-401.1 of the Act (210 ILCS 45/3-401.1 (West 2012)). Manorcare's counsel responded that the facility administrator had "discussed the situation at length" with Manorcare's corporate legal department and had "determined that the liability the facility face[d] for allowing [plaintiff] back into the facility [was] greater than any sanction they may incur from the [Department]." Counsel for Manorcare indicated that withdrawal of the notice of involuntary transfer or discharge would "be forthcoming shortly." Counsel further represented that Manorcare had located another facility that was willing to admit plaintiff.

¶ 5        Manorcare then notified the Department via a certified letter that it was "formally withdraw[ing]" its notice of involuntary transfer or discharge, and it asked the Department to "close this file with your office." In an e-mail to the Department's administrative law judge (ALJ) assigned to the matter, plaintiff requested that his hearing continue, arguing that it was "illegal and inappropriate for the facility to discharge [him] *** in the middle of his involuntary discharge hearing." Plaintiff further argued that Manorcare violated the Act's bed-hold provision by refusing to readmit him following his hospitalization.

¶ 6        On February 18, 2014, the ALJ issued a written report and recommendation, finding that Manorcare had "sent a letter of withdrawal" and that "[t]he Notice of Involuntary Transfer or Discharge would no longer be necessary." On February 24, 2014, the Department accepted the ALJ's recommendation and entered a final order "dismissing" Manorcare's notice of involuntary transfer or discharge and closing the matter without completing plaintiff's hearing.

¶ 7        Plaintiff timely filed a complaint for administrative review in the circuit court of Lake County. On the Department's motion, the court dismissed the complaint with prejudice on the ground that the controversy became moot when Manorcare withdrew its notice of involuntary transfer or discharge. Plaintiff timely appeals.

¶ 8                                II. ANALYSIS

¶ 9        Plaintiff contends that this appeal presents "a narrow legal issue that has significant public policy implications." He frames the issue as follows: "[C]an a State and Federally regulated nursing home facility eliminate a resident's statutorily protected right to an involuntary discharge hearing by simply withdrawing its notice of discharge but simultaneously refusing to allow the resident to return to *** the facility after hospitalization?"

¶ 10                A. Motion to Strike Manorcare's Brief

¶ 11        As an initial matter, we address plaintiff's request that we strike Manorcare's brief for violations of Illinois Supreme Court Rule 341 (eff. Feb. 6, 2013). Plaintiff correctly points out that the brief does not contain any citation of authority or the record, in violation of the requirement that an appellee's brief contain argument "with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7), (i) (eff. Feb. 6, 2013).

¶ 12        A party's brief that fails to substantially conform to the pertinent supreme court rules may justifiably be stricken. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7. The purpose of the rules is to require parties to present clear and orderly arguments, supported by citations of authority and the record, so that this court can properly ascertain and dispose of the issues involved. *Hall*, 2012 IL App (2d) 111151, ¶ 7. Striking a party's brief, in whole or in part, is a harsh sanction and is appropriate only when the violations hinder our review. *Hall*, 2012 IL App (2d) 111151, ¶ 15.

¶ 13        We conclude that Manorcare's glaring rule violations warrant striking its brief. Not only has Manorcare failed to cite a single authority or the record, but also it has provided only one page of argument, in which it offers nothing of substance to assist us in resolving the issues on appeal. In fact, Manorcare contends that "the sole issue" before this court is "whether or not the trial court erred in granting [the Department's] motion to dismiss." However, it is

well established that in an administrative review action the appellate court reviews the agency's decision, not the trial court's decision. *Lambert v. Downers Grove Fire Department Pension Board*, 2013 IL App (2d) 110824, ¶ 23. Because Manorcare's rule violations hinder our review, we strike its brief. We will consider only plaintiff's and the Department's briefs.

¶ 14                                   B. Statutory Background

¶ 15        Before we reach the merits of the appeal, it is helpful to outline the applicable federal and state statutes and regulations, which we group into two categories: (1) those governing the transfer or discharge of residents from nursing homes; and (2) those governing the reservation of beds for residents who leave nursing facilities for temporary hospitalizations.

¶ 16            1. Statutes and Regulations Governing Transfer or Discharge

¶ 17        As part of the Omnibus Budget Reconciliation Act of 1987, Congress enacted amendments to the Social Security Act that comprehensively revised and strengthened the statutory provisions applicable to nursing facilities that participate in Medicare or Medicaid. Pub. L. No. 100-203, §§ 4201-4218, 101 Stat. 1330 (1987) (codified as amended in scattered sections of 42 U.S.C.). The amendments are commonly known as the "Federal Nursing Home Reform Amendments" (FNHRA). See Eric C. Surette, Annotation, *Construction and Application of Federal Nursing Home Reform Amendments (FNHRA)*, 55 A.L.R. Fed. 2d 195 (2011).

¶ 18        Pertinent here, FNHRA requires each state participating in the Medicaid program to ensure that Medicaid-certified nursing facilities in the state comply with certain federal statutory requirements. 42 U.S.C. § 1396a(a)(28)(A) (2012). Among the requirements, which are listed in subsections (b) through (d) of 42 U.S.C. § 1396r, are provisions relating to residents' rights. 42 U.S.C. § 1396r(c) (2012). They provide, among other things, that a nursing facility may transfer or discharge a resident from the facility in only six circumstances, including when "the safety of individuals in the facility is endangered" or when "the health of individuals in the facility would otherwise be endangered." 42 U.S.C. § 1396r(c)(2)(A)(iii), (iv) (2012). They further state that, at least 30 days prior to a transfer or discharge, a nursing facility must provide a resident with notice of the transfer or discharge and the reasons therefor. 42 U.S.C. § 1396r(c)(2)(B) (2012). When the health or safety of individuals in the facility is endangered, however, a facility must provide notice only "as many days before the date of the transfer or discharge as is practicable." 42 U.S.C. § 1396r(c)(2)(B)(ii) (2012). The notice must include, among other things, notice of the resident's right to appeal the transfer or discharge. 42 U.S.C. § 1396r(c)(2)(B)(iii) (2012).

¶ 19        FNHRA further provides that, as a condition of participating in Medicaid, a state must provide an appeals process for transfers or discharges of residents from nursing facilities. 42 U.S.C. § 1396r(e)(3) (2012). The appeals process must be a "fair mechanism" that meets certain minimum standards. 42 U.S.C. § 1396r(e)(3), (f)(3) (2012). Those standards are established by the Centers for Medicare and Medicaid Services (CMS) and are outlined in sections 431.200 to 431.250 of Title 42 of the Code of Federal Regulations. 42 C.F.R. §§ 431.200 to 431.250 (2012). They require a state to grant an opportunity for a hearing to, among other individuals, "[a]ny resident who requests it because he or she believes a skilled nursing facility or nursing facility has erroneously determined that he or she must be

transferred or discharged." 42 C.F.R. § 431.220(a)(3) (2012). The state's hearing system must meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254 (1970) (42 C.F.R. § 431.205(d) (2012)), and other specified standards. See 42 C.F.R. §§ 431.205 to 431.246 (2012).

¶ 20    Although FNHRA does not define "transfer" or "discharge," CMS has defined the terms in its regulations. "Transfer" is defined, in pertinent part, as "movement from an entity that participates *** in Medicaid as a nursing facility *** to another institutional setting when the legal responsibility for the care of the resident changes from the transferring facility to the receiving facility." 42 C.F.R. § 483.202 (2012). "Discharge" is defined, in pertinent part, as "movement from an entity that participates *** in Medicaid as a nursing facility *** to a noninstitutional setting when the discharging facility ceases to be legally responsible for the care of the resident." 42 C.F.R. § 483.202 (2012).

¶ 21    By enacting the Nursing Home Care Act, Illinois has implemented standards for nursing facilities, consistent with FNHRA. The Act provides that "[a] facility may involuntarily transfer or discharge a resident only for one or more of the following reasons: (a) for medical reasons; (b) for the resident's physical safety; (c) for the physical safety of other residents, the facility staff or facility visitors; or (d) for either late payment or nonpayment for the resident's stay." 210 ILCS 45/3-401 (West 2012). The Act defines "discharge" as "the full release of any resident from a facility" (210 ILCS 45/1-111 (West 2012)) and defines "transfer" as "a change in status of a resident's living arrangements from one facility to another facility" (210 ILCS 45/1-128 (West 2012)).

¶ 22    Consistent with the federal statute, the Act requires a nursing facility to give written notice to a resident prior to an involuntary transfer or discharge. 210 ILCS 45/3-402 (West 2012). However, Illinois requires that the notice be given only 21 days prior to the proposed action.[1] 210 ILCS 45/3-402 (West 2012). No written notice is required when a transfer or discharge is ordered by the resident's attending physician due to the resident's health-care needs (210 ILCS 45/3-402(a) (West 2012)) or mandated by the physical safety of other residents, the facility staff, or facility visitors, as documented in the resident's clinical record (210 ILCS 45/3-402(b) (West 2012)). When a transfer or discharge occurs for reasons of physical safety, the Department is required to "immediately offer" transfer or discharge and relocation assistance. 210 ILCS 45/3-402 (West 2012).

¶ 23    The written notice required under section 3-403 of the Act must contain, among other things, a notification of the resident's right to request a hearing before the Department on the issue of transfer or discharge. 210 ILCS 45/3-403(c) (West 2012). Following receipt of the notice, a resident has 10 days to file a request for a hearing with the Department. 210 ILCS 45/3-410 (West 2012). If a resident requests a hearing, the transfer or discharge is stayed, unless a circumstance described under paragraphs (a) and (b) of section 3-402 arises in the interim. 210 ILCS 45/3-404 (West 2012). The Department must hold a hearing "not later than 10 days" after a hearing request is filed and render a decision within 14 days of the

---

[1]At least one commentator has pointed out that Illinois's 21-day notice requirement is inconsistent with the federal requirement of 30 days' notice. Kathleen Knepper, *Involuntary Transfers and Discharges of Nursing Home Residents Under Federal and State Law*, 17 J. Legal Med. 215, 228 (1996). We merely note the discrepancy.

filing of the hearing request.[2] 210 ILCS 45/3-411 (West 2012). At the hearing, the burden of proof rests on the entity requesting the transfer or discharge. 210 ILCS 45/3-412 (West 2012).

¶ 24   The Department's administrative regulations implementing the transfer and discharge provisions of the Act are found in section 300.330 of Title 77 of the Illinois Administrative Code (77 Ill. Adm. Code 300.330 (2011)) and are consistent with the Act's provisions. Likewise, the Department's definitions of "transfer" and "discharge" are identical to the Act's definitions. 77 Ill. Adm. Code 300.330 (2011).

¶ 25                     2. Statutes and Regulations Governing Bed Holds

¶ 26   FNHRA also requires any nursing facility participating in Medicaid to provide a written notice of its bed-hold policy to a resident who is transferred to a hospital. 42 U.S.C. § 1396r(c)(2)(D)(i), (ii) (2012). The notice must also be given to an immediate family member or legal representative. 42 U.S.C. § 1396r(c)(2)(D)(i), (ii) (2012). It must contain any applicable state provisions regarding readmission of the resident following the hospitalization, as well as the facility's written policy regarding readmission. 42 U.S.C. § 1396r(c)(2)(D)(i) (2012). The facility's written policy must, at a minimum, permit the resident to be readmitted "immediately upon the first availability of a bed in a semiprivate room in the facility," as long as the resident requires the facility's services and remains eligible for Medicaid. 42 U.S.C. § 1396r(c)(2)(D)(i), (iii) (2012).

¶ 27   The only provision under Illinois law regarding readmission of nursing-facility residents following hospitalizations is contained in section 3-401.1 of the Act. That section provides that a nursing facility participating in Medicaid "is prohibited from failing or refusing to retain as a resident any person because he or she is a recipient of or an applicant for [Medicaid]." 210 ILCS 45/3-401.1(a) (West 2012). It further provides that, for purposes of section 3-401.1, "a recipient or applicant shall be considered a resident in the facility during any hospital stay totaling 10 days or less following a hospital admission." 210 ILCS 45/3-401.1(a-10) (West 2012). Thus, a nursing facility cannot refuse to readmit a resident following a hospitalization of 10 days or less on the basis that the resident is a recipient of or an applicant for Medicaid. This provision is significant because, following the enactment of the Save Medicaid Access and Resources Together Act (Pub. Act 97-689 (eff. June 14, 2012)), the Department no longer pays for the cost of reserving a bed in a nursing facility during a resident's hospitalization. See 305 ILCS 5/5-5e(a)(2) (West 2012).

¶ 28                 C. Plaintiff's Right to an Involuntary Transfer or Discharge Hearing

¶ 29   With the applicable statutory and regulatory background in place, we now turn to the merits. Plaintiff argues that the Department erred in declining to complete the hearing on his involuntary transfer or discharge from Manorcare. He contends that, even after Manorcare withdrew its notice of involuntary transfer or discharge, the Department retained authority to continue the hearing. In support of this contention, he maintains that he remained a resident of the facility during his hospitalization at Northwestern Memorial Hospital, pursuant to

_____

[2]These deadlines were not met in this case; however, the parties have not addressed this issue, and we decline to address it *sua sponte*.

- 6 -

section 3-401.1(a-10) of the Act. He further contends that the Department's failure to conduct a full administrative hearing violated his right to procedural due process.

¶ 30    The Department responds that a hearing on a planned involuntary transfer or discharge provides a facility with an opportunity to prove to the Department that the transfer or discharge is authorized under the Act. The Department contends that, following Manorcare's withdrawal of its notice, Manorcare was no longer seeking the Department's approval of an involuntary transfer or discharge. Thus, the Department argues, it no longer had the statutory authority to conduct a hearing. The Department further points out that, if plaintiff believed that Manorcare violated the Act when it failed to readmit him to the facility, he could have filed a complaint pursuant to section 3-702 of the Act (210 ILCS 45/3-702 (West 2012)), which authorizes any person who believes that the Act has been violated to request an investigation.

¶ 31    As noted above, in an administrative review action, this court reviews the agency's decision, not the trial court's decision. *Lambert*, 2013 IL App (2d) 110824, ¶ 23. The applicable standard of review depends upon whether the issue presents a question of law, a question of fact, or a mixed question of fact and law. *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005). When an appeal presents a question of law, as this appeal does, our review is *de novo*. *American Federation of State, County & Municipal Employees, Council 31*, 216 Ill. 2d at 577; see also *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 13 (an issue of statutory construction presents a question of law, reviewed *de novo*).

¶ 32    In construing a statute, our primary aim is to ascertain and give effect to the legislature's intent. *Slepicka*, 2014 IL 116927, ¶ 14. The best indicator of legislative intent is the language of the statute, which must be given its plain, ordinary, and popularly understood meaning. *Slepicka*, 2014 IL 116927, ¶ 14. A court should not read language in isolation but must consider it in the context of the entire statute. *Slepicka*, 2014 IL 116927, ¶ 14. "Each word, clause and sentence of a statute must be given a reasonable construction, if possible, and should not be rendered superfluous." *Slepicka*, 2014 IL 116927, ¶ 14. "Clear and unambiguous language will be enforced as written." *Slepicka*, 2014 IL 116927, ¶ 14.

¶ 33    The parties frame the issue on appeal as pertaining to the Department's statutory authority to conduct a hearing after Manorcare withdrew its notice of involuntary transfer or discharge. Plaintiff contends that the Department had the authority to conduct a hearing as long as Manorcare planned to transfer or discharge him, regardless of whether Manorcare had withdrawn its notice. The Department contends that a notice of transfer or discharge is akin to a complaint in a civil suit, such that Manorcare's withdrawal of the notice deprived the Department of the authority to conduct a hearing. While the parties' characterization of the issue on appeal might not be improper, we resolve the appeal on slightly different grounds.

¶ 34    Plaintiff's claim of error on appeal depends upon the proposition that, when Manorcare informed him that it would not readmit him to the facility following his hospitalization, he was entitled to the continuation of his discharge hearing to address this matter. However, after reviewing the language of FNHRA and the Act, we conclude that this proposition is incorrect.

¶ 35    We first address the language of FNHRA and the federal regulations promulgated to implement it. FNHRA provides that any resident who is the subject of a planned transfer or

discharge is entitled to notice and a hearing. 42 U.S.C. § 1396r(c)(2)(B), (e)(3) (2012). As noted, although FNHRA does not define "transfer" or "discharge," CMS has defined those terms in its regulations. "Transfer" is defined, in relevant part, as movement from a nursing facility to another institutional setting, and "discharge" is defined, in relevant part, as movement from a nursing facility to a noninstitutional setting. 42 C.F.R. § 483.202 (2012). Notably, neither of those definitions contains language relating to a resident's readmission to a nursing facility following a hospitalization. While a resident's movement to a hospital from a nursing facility could fall within CMS's definition of "transfer," a resident's movement from a hospital to a nursing facility could not. Nor would a nursing facility's refusal to readmit a resident following a hospitalization fall within the ambit of "transfer" or "discharge," because both of those terms are defined as "movement from a nursing facility" to another setting. Once a resident is in a hospital, he or she cannot be "moved from" the nursing facility.

¶ 36        Rather, a resident's readmission to a nursing facility following a hospitalization is governed by separate provisions of FNHRA. Specifically, again, when a resident is transferred to a hospital, a nursing facility must provide written notice to the resident and an immediate family member or legal representative of any applicable state provisions and of the facility's written policy regarding readmission following a hospitalization. 42 U.S.C. § 1396r(c)(2)(D) (2012). The written policy must, at a minimum, permit a resident to be readmitted "immediately upon the first availability of a bed in a semiprivate room in the facility," as long as the resident requires the facility's services and remains eligible for Medicaid. 42 U.S.C. § 1396r(c)(2)(D)(i), (iii) (2012).

¶ 37        Reading the language of FNHRA's provisions together, the clear and unambiguous meaning is that a nursing-facility resident is entitled to notice of and a hearing on a transfer or discharge, but not on a refusal of readmission following a hospitalization. Although FNHRA requires a nursing facility to readmit a resident upon the first availability of a bed, it does not contemplate a hearing if a resident is denied readmission. Indeed, FNHRA requires each state participating in Medicaid to provide an appeals process for "transfers and discharges" of residents from nursing facilities. 42 U.S.C. § 1396r(e)(3) (2012). The appeals process must meet the standards established by CMS, which require a state to grant a hearing to, among other individuals, "[a]ny resident who requests it because he or she believes a skilled nursing facility or nursing facility has erroneously determined that he or she must be transferred or discharged." 42 C.F.R. § 431.220(a)(3) (2012). No appeals process is mandated for residents denied readmission.

¶ 38        We reach the same conclusion with respect to the Act. Relying on section 3-401.1(a-10) of the Act, plaintiff contends that he remained a "resident" of Manorcare during his hospitalization. However, section 3-401.1(a-10) provides that, "*[f]or the purposes of this Section*, a recipient or applicant shall be considered a resident in the facility during any hospital stay totaling 10 days or less following a hospital admission." (Emphasis added.) 210 ILCS 45/3-401.1(a-10) (West 2012). Thus, it is only for purposes of section 3-401.1 that an individual is considered a "resident" of a nursing facility during any hospital stay of 10 days or less. This is significant, because it means that an individual is not considered a resident of a nursing facility during a hospital stay of 10 days or less for purposes of any other section of the Act. In other words, a hospitalized individual is not a resident for purposes of section 3-410 of the Act, which provides that "[a] resident subject to involuntary transfer or

discharge from a facility" is entitled to a hearing before the Department (210 ILCS 45/3-410 (West 2012)). Likewise, a hospitalized individual is not a resident for purposes of sections 1-111 and 1-128 of the Act, which define "discharge" as "the full release of any resident from a facility" (210 ILCS 45/1-111 (West 2012)) and "transfer" as "a change in status of a resident's living arrangements from one facility to another facility" (210 ILCS 45/1-128 (West 2012)).[3]

¶ 39    Based on the foregoing, we reject plaintiff's contention that the Department erred in failing to complete the hearing on his involuntary transfer or discharge. The hearing commenced after Manorcare provided plaintiff with a notice of involuntary transfer or discharge and plaintiff requested a hearing before the Department. However, plaintiff then voluntarily left Manorcare for a preplanned surgical procedure at Northwestern Memorial Hospital. According to plaintiff, he remained a resident of Manorcare during this time, such that its refusal to readmit him constituted an involuntary discharge from the facility. As explained above, however, plaintiff was considered to be a resident during his hospitalization only for purposes of section 3-401.1 of the Act. Accordingly, when Manorcare withdrew its notice, there was no longer a planned transfer or discharge–as those terms are defined in the Act–requiring the Department's authorization. Likewise, for the reasons explained above, Manorcare's refusal to readmit plaintiff following his hospitalization did not trigger any right to a hearing under FNHRA or the CMS regulations.

¶ 40    Our conclusion in this case is not unprecedented. A similar issue arose in Massachusetts, and the Medicaid agency of that state ultimately revised the applicable state regulations to provide a right to a hearing for any resident who is denied readmission to a nursing facility following a brief hospitalization. Although both are unpublished cases, *Short v. Department of Public Health*, No. CA922568B, 1995 WL 809557 (Mass. Super. Ct. Mar. 13, 1995), and *Brunelle v. Commissioner of the Division of Medical Assistance*, No. 01-P-1113, 2003 WL 21556941 (Mass. App. Ct. July 10, 2003), are helpful because they outline this background. See *Nulle v. Krewer*, 374 Ill. App. 3d 802, 806 n.2 (2007) (this court is free to use the reasoning in an unpublished opinion from another state).

¶ 41    In *Short*, a group of nursing-home residents brought a class action suit against the Massachusetts Medicaid agency, seeking to compel it to comply with FNHRA's transfer and discharge notice and appeal provisions. *Short*, 1995 WL 809557, at *1. The plaintiffs moved for summary judgment on the issue of whether the agency had violated "their rights as nursing home residents to notice and an opportunity to appeal: (1) transfers from nursing homes to hospitals or other institutions; and (2) refusals to be readmitted to nursing home facilities following hospitalization." *Short*, 1995 WL 809557, at *1. The superior court concluded that the plaintiffs were entitled to notice and a hearing when transferred from a facility to a hospital. *Short*, 1995 WL 809557, at *3. However, the court concluded that the plaintiffs were not entitled to notice and a hearing when they were denied readmission following a hospitalization. *Short*, 1995 WL 809557, at *4. The court reasoned, as we did above, that there was no provision in FNHRA or the federal regulations for notice and a hearing for an individual who was denied readmission following a hospitalization. *Short*, 1995 WL 809557, at *4.

---

[3]"Facility" does not include a hospital. See 210 ILCS 45/1-113 (West 2012).

¶ 42        A similar issue arose in *Brunelle*. In that case, the Medicaid agency ruled that a resident who had been denied readmission to a nursing facility following a hospitalization was not entitled to a hearing, because the facility's refusal to readmit the resident was neither a "transfer" nor a "discharge." *Brunelle*, 2003 WL 21556941, at *1. The resident appealed the decision, and, while the appeal was pending, the agency acknowledged the "gap" in the law and amended its regulations to close the gap. *Brunelle*, 2003 WL 21556941, at *1. As the court explained:

> "The [agency] *** recognized that the lack of any procedural mechanism in the then-applicable Federal regulations to grant a hearing where a nursing facility denied a patient readmission following a brief hospitalization was a gap in the law that could adversely affect nursing facility patients, and it amended the Massachusetts regulations, effective April 1, 2002. The amendment created a right to a hearing in circumstances where a patient, such as Brunelle, is hospitalized on a short-term basis and, upon discharge, is later denied readmittance to a nursing facility." *Brunelle*, 2003 WL 21556941, at *1.

Acknowledging that the new regulations resolved the controversy before it, the court then dismissed the appeal as moot. *Brunelle*, 2003 WL 21556941, at *1-2.

¶ 43        The experience of Massachusetts provides helpful guidance. It supports our conclusion that neither FNHRA nor CMS's regulations provide a right to a hearing for an individual who is denied readmission to a nursing facility following a hospitalization. In addition, it shows that the responsibility for effecting any change in the law falls to the legislature or the Department, not this court. The amended regulations in Massachusetts explicitly define a nursing facility's failure to readmit a resident following a hospitalization as both a "transfer" and a "discharge." *Brunelle*, 2003 WL 21556941, at *1 n.1. It is up to the legislature or the Department to determine if a similar revision to the Act or to the Department's regulations is appropriate in Illinois.

¶ 44                          D. Plaintiff's Right to Procedural Due Process

¶ 45        Plaintiff also contends that the Department's failure to conduct a full administrative hearing violated his right to procedural due process. However, the only argument plaintiff offers in support of this contention is that, when an agency fails to follow established internal guidelines, the failure can constitute a violation of procedural due process.

¶ 46        As we determined above, the Department did not violate FNHRA, the federal regulations, the Act, or the Department's regulations when it declined to complete plaintiff's hearing. Accordingly, plaintiff's argument that the Department failed to follow established internal guidelines requiring notice and a hearing fails.

¶ 47        We further point out, as the Department does, that plaintiff could have submitted to the Department a request for an investigation pursuant to section 3-702 of the Act. That section permits any person who believes that the Act or a rule promulgated under the Act has been violated to request an investigation. 210 ILCS 45/3-702(a) (West 2012). The Department must then determine whether any violation has occurred. 210 ILCS 45/3-702(a) (West 2012). A complainant who is dissatisfied with the Department's determination may request a hearing before the Department under section 3-703 of the Act. 210 ILCS 45/3-702(g) (West 2012).

III. PETITION FOR REHEARING

¶ 49 After we filed our original opinion on March 26, 2015, plaintiff filed a petition for rehearing pursuant to Illinois Supreme Court Rule 367 (eff. Jan. 1, 2015). In his petition, he indicates that, on March 1, 2015, he was discharged from his nursing facility into the community and no longer requires skilled nursing care. He states that this appeal "may be moot," citing *In re Tekela*, 202 Ill. 2d 282 (2002).

¶ 50 In *Tekela*, which was a termination-of-parental-rights case, the supreme court held that the appellate court should have vacated its opinion when it learned, after filing its opinion, that the children had been adopted while the appeal was pending. *Tekela*, 202 Ill. 2d at 292. The court explained that, even though the appellate court was unaware of the adoption when it filed its opinion, the adoption rendered the appeal moot. *Tekela*, 202 Ill. 2d at 292, 297.

¶ 51 Notably, in the section of his original appellant's brief addressing the trial court's determination that the matter became moot when Manorcare withdrew its notice of involuntary transfer or discharge, plaintiff argued that the public-interest exception to the mootness doctrine applied to this case. We agree. Thus, even assuming *arguendo* that this appeal became moot on March 1, 2015, we need not vacate our opinion.

¶ 52 The public-interest exception applies when: (1) the question presented is of a substantial public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) the question is likely to recur. *Felzak v. Hruby*, 226 Ill. 2d 382, 393 (2007). The first criterion "is only satisfied when it has been clearly established that the issue is of 'sufficient breadth, or has a significant effect on the public as a whole.' " *In re Marriage of Eckersall*, 2015 IL 117922, ¶ 15 (quoting *Felzak*, 226 Ill. 2d at 393). Our legislature considers compliance with the Act to be of such public significance that it has deemed the operation of a nursing facility in violation of the Act to be "a public nuisance inimical to the public welfare." 210 ILCS 45/3-701 (West 2012). Therefore, we conclude that the first criterion is satisfied.

¶ 53 The second and third criteria are also satisfied. The failure to readmit a resident to a nursing facility following a temporary hospitalization occurs with enough regularity that a term has been coined to describe the occurrence. See William Pipal, Note, *You Don't Have to Go Home But You Can't Stay Here: The Current State of Federal Nursing Home Involuntary Discharge Laws*, 20 Elder L.J. 235, 236 n.2 (2012) (citing a news article discussing the increasing prevalence of "hospital dumping"). Our determination that neither FNHRA nor the Act provides residents facing this situation with the right to a hearing provides important guidance to public officials. The experience of Massachusetts, where awareness of this issue prompted an amendment of the definitions of "transfer" and "discharge" to include the failure to readmit a resident following a temporary hospitalization, supports this conclusion. Therefore, we hold that the public-interest exception to the mootness doctrine applies in this case.

¶ 54 Also in his petition for rehearing, plaintiff contends that we ignored that FNHRA and the Act provided him the right to readmission to Manorcare following his hospitalization. We clarify that nothing in this opinion addresses plaintiff's right to readmission following his hospitalization. Our holding is limited to the conclusion that plaintiff did not have the right to a hearing upon Manorcare's refusal to readmit him following his hospitalization. As we said,

in order to challenge Manorcare's failure to readmit him, plaintiff needed to file a complaint with IDHP, as section 3-702 of the Act permitted him to do.

¶ 55                              IV. CONCLUSION
¶ 56        For the foregoing reasons, we affirm the Department's decision and the judgment of the circuit court of Lake County.

¶ 57        Affirmed.