# Illinois Official Reports

## Appellate Court

---

### *Burrell v. Village of Sauk Village*, 2017 IL App (1st) 163392

---

| | |
|---|---|
| Appellate Court Caption | BARRY J. BURRELL, Plaintiff-Appellant, v. THE VILLAGE OF SAUK VILLAGE and TIMOTHY HOLEVIS and ROBERT GROSSMAN, Police Officers for the Village of Sauk Village, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-16-3392 |
| Filed | December 13, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-L-8700; the Hon. John Callahan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James M. Baranyk, of Second City Law, P.C., of Chicago, for appellant.<br><br>Brian P. Gainer and Garrett L. Boehm, Jr., of Johnson & Bell, Ltd., and Jennifer T. Turiello, of Peterson, Johnson & Murray-Chicago LLC, both of Chicago, for appellees. |

JUSTICE LAVIN delivered the judgment of the court, with opinion. Presiding Justice Cobbs and Justices Howse concurred in the judgment and opinion.


## OPINION

¶ 1        This appeal arises from the Cook County circuit court's order granting summary judgment in a malicious prosecution action to defendants Sauk Village and Sauk Village police Detectives Timothy Holevis and Robert Grossman. On appeal, plaintiff Barry J. Burrell contends that the trial court erroneously granted defendants' motion for summary judgment because defendants did not have probable cause to charge defendant with first degree murder. We affirm.

¶ 2                                    BACKGROUND

¶ 3        This case arises from the arrest and prosecution of plaintiff for the murder of his one-month-old niece Kailie. Plaintiff filed the underlying action on August 19, 2014, after a jury found him not guilty of first degree murder. The complaint alleged malicious prosecution and intentional infliction of emotional distress, claiming that defendants commenced the criminal proceedings without probable cause and with knowledge that plaintiff was innocent of the crime charged.

¶ 4        Several depositions were taken during discovery. Plaintiff testified that on August 22, 2006, he was the primary caregiver for his infant niece Kailie, as well as his other three nieces, two nephews, and son. Sharon McCary, plaintiff's mother, was working and did not return home until the evening, while Antoine Burrell, plaintiff's brother, left for work in the afternoon. Plaintiff recalled that he saw Kailie three times that day: in the morning when she was sleeping in her bassinet, in the afternoon lying on the bed with her two sisters Kenita and Kendra, and in the evening when Kendra brought Kailie to plaintiff exclaiming, "the baby is not breathing." Plaintiff patted Kailie on the back, and her "head rolled and her arm fell off of Kendra's shoulder." Plaintiff then told Kendra that Kailie was fine and to put her to sleep in her bassinet. The next morning plaintiff awoke to McCary screaming that something was wrong with Kailie, whom plaintiff observed to be stiff. After the paramedics arrived, a responding officer from the Sauk Village police department asked plaintiff a few questions about what happened to Kailie. Plaintiff stated that he "didn't know." Kendra allegedly told plaintiff that "the bed fell on the baby," but plaintiff did not mention this fact to his family, the paramedics, or police officers.

¶ 5        The following day, Sauk Village police department officers transported plaintiff to the Chicago Heights police department to be interviewed by Detectives Holevis and Grossman. During the interview, Detective Grossman mentioned the possibility that Kendra killed Kailie, but plaintiff did not mention Kendra's admission about the bed falling on Kailie. Instead, plaintiff told the detectives that he was holding Kailie and passed out, which resulted in his shoulder landing on Kailie's chest. Plaintiff later admitted that this statement was

false.[1]  Plaintiff further testified that toward the end of the interview, Cook County Assistant State's Attorney (ASA) Nick D'Angelo questioned plaintiff and accused him of torturing Kailie. Plaintiff was then transferred and held in county jail until his trial date.

¶ 6    Kendra testified that on the day of the incident she tripped on some high-heeled shoes when she was carrying Kailie and fell on the carpeted floor. Kendra then placed Kailie back in her bassinet, which immediately fell on top of Kailie. Kendra did not recall shaking Kailie violently, squeezing her tightly, or telling the police or the Department of Child and Family Services (DCFS) about the above incident. McCary also testified that Kendra confessed to dropping Kailie, but McCary never reported this to law enforcement officials.

¶ 7    Detectives Holevis and Grossman testified that the totality of the investigation led them to believe that plaintiff was responsible for Kailie's death. Detective Holevis attended the autopsy, where the medical examiner, Dr. Michelle Jordan, ruled Kailie's death a homicide and specifically told Detective Holevis that Kailie's femur fracture could only have been caused by an adult. Interviews with McCary and Antoine revealed that plaintiff was the only adult present at the approximate time of Kailie's death. The detectives also noted that throughout the course of his interview, plaintiff claimed that he unintentionally injured Kailie when he blacked out and fell on her. Neither detective interviewed Kendra or reviewed interviews conducted by other law enforcement agencies. The detectives were first informed of Kendra's alleged statements when the ASA showed Detective Holevis a DCFS report before trial. Detective Grossman received an anonymous call from someone claiming that Kendra dropped Kailie, but Detective Grossman did not believe this was relevant because Dr. Jordan "categorically denied" that dropping Kailie would have caused the fatal injuries.

¶ 8    Dr. Jordan confirmed her finding of death as homicide by multiple injuries due to blunt force trauma. During her testimony, she referenced her autopsy report noting that Kailie had external injuries consisting of "scattered petechial hemorrhages" on her lower gum line and "a pinpoint red abrasion" on the midline chest. Kailie's internal injuries consisted of a "skull fracture" that had "significant brain swelling," as well as "a pronounced sub scalp and subgaleal hemorrhage involving the scalp." Further, "[t]here [were] bilateral rib fractures" and "optic nerve sheath hemorrhages." There was also "a contusion or bruise involving the left diaphragm *** lung contusions *** a liver laceration *** a transverse fracture involving the left femur or thigh bone, and *** hemorrhage of the soft tissue that encase[d] the bowel." Dr. Jordan deduced that all of these injuries were caused by "blunt force trauma," which "would be force applied to the body." For instance, it "would be a punch. It could be a kick. It could be being struck with an object or the object falling against another object." When directly asked if there was "any reason to suspect that a child had caused these significant injuries that [she] saw and documented," Dr. Jordan responded, "I would say no, based on the information that I had at the time." Additionally, Dr. Jordan received a call from a woman claiming to be Kailie's mother, saying "it's an accident because the child fell out of the bassinet and the bassinet fell over the child." Dr. Jordan then requested the bassinet be brought into the office for examination and was "steadfast in her opinion" that Kailie's injuries were not consistent with Kailie falling out of the bassinet. Furthermore, Dr. Jordan did not believe that "a child carrying the baby who's approximately four feet, six inches tall,

_____

[1]We note that on the interview video recordings plaintiff changed his story regarding the events pertaining to Kailie's death several times.

stumbling and falling, and in the process falling on her knees, dropping the baby on the carpeted floor" or "a baby landing on high-heeled shoes" could have caused Kailie's injuries. Given the severity of Kailie's injuries, Dr. Jordan did not believe it was probable that a child was the perpetrator.

¶ 9 Additionally, testimony from ASAs Mary-Beth Kent-Duffy and Kathryn M. Morrissey revealed the following. ASA Duffy was involved in the case during pretrial motions, while ASA Morrissey tried the case to a not guilty verdict. Both ASAs stated that they felt there was probable cause to prosecute plaintiff, as the felony review division of the Cook County State's Attorney's office approved the charge of murder against plaintiff. The case then went before a grand jury, which returned a true bill indicting plaintiff of first degree murder. Thereafter, plaintiff filed a motion to quash his arrest for lack of probable cause, but the trial court denied the motion after reviewing the evidence.

¶ 10 Neither ASA changed her position on probable cause when the defense presented the theory that Kendra caused Kailie's injuries. ASA Duffy recalled that she did not believe a child was capable of committing the injuries because it "would take an inordinate amount of strength to be able to break a one-month-old's bone[s] like that." ASA Morrissey called the defense theory "ridiculous" and said that the new Cook County medical examiner, Dr. Stephen Cina, believed Kendra's statement of what happened was inconsistent with Kailie's injuries. After interviewing Kendra, ASA Morrissey believed that Kendra was "being fed a story" because her answers were inconsistent with her original statement.

¶ 11 Following discovery, defendants filed a motion for summary judgment arguing that probable cause existed to charge plaintiff with murder, thus vitiating plaintiff's malicious prosecution claim. Defendants' motion also argued that plaintiff's intentional infliction of emotional distress claim was barred by the applicable one-year statute of limitations. After hearing arguments, the trial court concluded that there was "no genuine issue of material fact regarding the existence of probable cause" to arrest and prosecute plaintiff. In addition, the trial court ruled that the intentional infliction of emotional distress claim was indeed filed "beyond the statute of limitations." Plaintiff then filed a timely appeal, challenging only the summary judgment ruling on probable cause in the malicious prosecution claim.

¶ 12                                                      ANALYSIS

¶ 13 Plaintiff contends that the trial court erroneously granted defendants' motion for summary judgment for malicious prosecution because there was no probable cause to prosecute plaintiff for first degree murder. Summary judgment is proper where the pleadings, admissions, depositions, and affidavits demonstrate there is no genuine issue as to any material fact so that the movant is entitled to judgment as a matter of law. *Ioerger v. Halverson Construction Co.*, 232 Ill. 2d 196, 201 (2008); 735 ILCS 5/2-1005 (West 2016). In determining whether a genuine issue of material fact exists, the court must consider such items strictly against the movant and liberally in favor of its opponent. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). We review the trial court's order granting summary judgment *de novo*. *Weather-Tite, Inc. v. University of St. Francis*, 233 Ill. 2d 385, 389 (2009).

¶ 14 We initially observe that plaintiff's brief fails to comply with Illinois Supreme Court Rule 341 (eff. Feb. 6, 2013). A party's brief that fails to substantially conform to the pertinent supreme court rules may justifiably be stricken. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7. The purpose of the rules is to require parties to present

clear and orderly arguments, supported by citations of authority and the record, so that this court can properly ascertain and dispose of the issues involved. *Id.* Striking a party's brief, in whole or in part, is a harsh sanction and is appropriate only when the violations hinder our review. *Gruby v. Department of Public Health*, 2015 IL App (2d) 140790, ¶ 12.

¶ 15 We conclude that plaintiff's glaring rule violation warrants striking his background facts section. Rule 341(h)(6) requires an appellant's brief to include a statement "contain[ing] the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate references to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Feb. 6, 2013). "Any statement that is argumentative or made without reference to the record need not be considered by this court." *Bank of Chicago v. Park National Bank*, 277 Ill. App. 3d 167, 168 (1995). Here, plaintiff's "statement of facts" is regrettably but undeniably replete with salacious argument more befitting a dime-store novel than an appellate brief. See *Beitner v. Marzahl*, 354 Ill. App. 3d 142, 145-46 (2004) ("[t]he appellate court has held that argumentative language is inappropriate for a statement of facts and against the mandate of the rule"). Thus, we disregard plaintiff's background facts when reviewing this matter and instead focus on the record on appeal, defendants' background facts, and the parties' arguments.

¶ 16 In order to prevail on a claim of malicious prosecution, the plaintiff must establish each of the following: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant, (2) the termination of the proceeding in favor of the plaintiff, (3) the absence of probable cause for such proceeding, (4) malice, and (5) damages. *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 641 (2002). Probable cause has been defined as "a state of facts that would lead a person of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person arrested committed the offense charged." (Internal quotation marks omitted.) *Ross v. Mauro Chevrolet*, 369 Ill. App. 3d 794, 801 (2006). The "existence of probable cause depends on the totality of the circumstances at the time of the arrest." *Gauger v. Hendle*, 2011 IL App (2d) 100316, ¶ 112. It is not the actual facts of the case or the guilt or innocence of the accused that is at issue, instead "it is the state of mind of the one commencing the prosecution." (Internal quotation marks omitted.) *Johnson v. Target Stores, Inc.*, 341 Ill. App. 3d 56, 72 (2003). Only a mistake or error of gross negligence will affect the question of probable cause when there is an honest belief by the complainant that the accused is probably guilty of the offense. *Id.* "If it appears that there was probable cause to institute the proceedings, such fact alone constitutes an absolute bar to an action for malicious prosecution." *Turner v. City of Chicago*, 91 Ill. App. 3d 931, 934-35 (1980) (citing *Mangus v. Cock Robin Ice Cream Co.*, 52 Ill. App. 3d 110, 116 (1977)).

¶ 17 Based on the record before us, we cannot say that the trial court erred in determining that there was probable cause to prosecute defendant, and in doing so, we find *Sang Ken Kim v. City of Chicago*, 368 Ill. App. 3d 648 (2006), persuasive. In *Kim*, the plaintiff was charged with first degree murder and aggravated criminal sexual assault for beating his pregnant girlfriend and killing her unborn baby. *Id.* at 652. Based on the victim's statement and the plaintiff's partial confession for pushing the victim, a grand jury indicted the plaintiff, who was released three years later after the victim recanted. *Id.* at 653. The plaintiff then filed a malicious prosecution suit contending that the police coerced his partial confession and did not contact key individuals during the investigation. After examining the totality of the

circumstances, this court determined that, independent of the plaintiff's partial confession, the defendants "had ample probable cause at the time of arrest to believe [the plaintiff] had committed a crime." *Id.* at 660. Specifically, the medical examiner who performed the baby's autopsy determined that the manner of death was homicide due to "blunt abdominal trauma." *Id.* at 656. Thus, "based on the above information, which was known to the detectives at the time of the arrest, the detectives held an objectively reasonable belief that [the] plaintiff had committed murder." *Id.*

¶ 18    Similarly, in the case *sub judice*, the record suggests that the totality of the circumstances gave detectives and the prosecution an objectively reasonable belief that plaintiff caused Kailie's death. Even independent of plaintiff's confession to unintentionally injuring Kailie, additional evidence existed to substantiate plaintiff's guilt. Several witnesses, including plaintiff, confirmed that he was the only adult present at the time of Kailie's death. In addition, Dr. Jordan ruled Kailie's death a homicide and deduced that all of Kailie's injuries were caused by blunt force trauma. She specifically told Detective Holevis that Kailie's injuries could only have been caused by an adult and confirmed this conclusion during her discovery deposition. Dr. Jordan also examined the bassinet and determined that Kailie's injuries were not consistent with Kailie falling out of the bassinet. Dr. Jordan observed that Kendra's alleged statement about tripping on high-heeled shoes and dropping Kailie on the carpeted floor could not have caused Kailie's injuries. Simply put, Dr. Jordan did not believe it was probable that a child committed the offense.

¶ 19    Both Detectives Holevis and Grossman also testified that they did not interview Kendra and were unaware of any statements she allegedly made about her involvement in Kailie's death until the eve of trial. Further, although ASAs Duffy and Morrissey knew about Kendra's alleged statements, they both believed probable cause existed to prosecute plaintiff based on the circumstances and medical examiner's determination. See *Grundhoefer v. Sorin*, 2014 IL App (1st) 131276, ¶ 13 ("[i]t is the state of mind of the one commencing the prosecution, and not the actual facts of the case or the guilt or innocence of the accused, that is at issue" (internal quotation marks omitted)). Furthermore, there were ample checks and balances in place. For instance, the felony review process approved the charges of first degree murder against plaintiff, and the grand jury returned an indictment after hearing all of the evidence. In addition, after reviewing the evidence the trial court denied plaintiff's motion to quash his arrest and subsequent motion to reconsider. Thus, when the evidence as a whole was taken into consideration, it was not unreasonable for defendants to have arrested and prosecuted plaintiff for first degree murder. See *Aboufariss v. City of DeKalb*, 305 Ill. App. 3d 1054, 1062 (1999) (in a malicious prosecution case, summary judgment was proper on the question of probable cause where defendants held an objectively reasonable belief that plaintiff had committed a crime); *Knox County v. Midland Coal Co.*, 265 Ill. App. 3d 782, 787 (1994) ("probable cause has been defined in a malicious prosecution case involving criminal proceedings as a state of facts that would lead a [person] of ordinary caution and prudence to believe, or to entertain an honest and strong suspicion, that the person arrested committed the offense charged" (internal quotation marks omitted)).

¶ 20    Moreover, plaintiff has forfeited his contention that defendants acted with malice, as plaintiff's brief lacks a thorough analysis applying the facts at issue to this area of law. See *Wilbourn v. Cavalenes*, 398 Ill. App. 3d 837, 852 (2010) ("cursory argument does not meet the standard of Illinois Supreme Court Rule 341(h)(7)"); *Country Mutual Insurance Co. v.*

*Styck's Body Shop, Inc.*, 396 Ill. App. 3d 241, 254-55 (2009) (bare contentions in the absence of argument or citation of authority do not merit consideration on appeal and are forfeited). And despite plaintiff's deficient argument, since we have already determined that there was probable cause to prosecute plaintiff, his claim for malicious prosecution fails as a matter of law. See *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996) (the absence of any one of the elements bars a plaintiff from pursuing a claim for malicious prosecution). Accordingly, the trial court did not err in granting defendants' motion for summary judgment.

¶ 21                                    CONCLUSION
¶ 22        Based on the foregoing, we affirm the judgment of the circuit court of Cook County.

¶ 23        Affirmed.